MEDISYS HEALTH NETWORK,
INC., Plaintiff–Appellee,

v.

LOCAL 348–S UNITED FOOD & COM-
MERCIAL WORKERS, AFL–CIO AND
CLC, Defendant–Appellant.

Docket No. 02–9144.

United States Court of Appeals,
Second Circuit.

Argued: May 9, 2003.

Decided: July 17, 2003.

J. Warren Mangan, O'Connor & Man-
gan, P.C., Long Island City, NY, for De-
fendant–Appellant.

Ronald G. Blum, Manatt, Phelps & Phil-
lips, LLP, New York, NY, for Plaintiff–
Appellee.

Before: FEINBERG, KATZMANN,
Circuit Judges, and MURTHA,* District
Judge.

* The Honorable J. Garvan Murtha, of the Unit-
ed States District Court for the District of
Vermont, sitting by designation.

FEINBERG, Circuit Judge.

Defendant Local 348–S, United Food & Commercial Workers, AFL–CIO and CLC (Local 348–S or union) appeals an order of the United States District Court for the Eastern District of New York (John Gleeson, J.), granting a motion by plaintiff MediSys Health Network, Inc. (MediSys) to remand the case to state court for lack of subject matter jurisdiction. The basic issue before us on this appeal from a remand order is whether we have jurisdiction over the appeal. For reasons set forth below, we hold that we do not and dismiss the appeal.

## I. Background

Local 348–S is the collective bargaining agent for the full-time working staff at Leben Home for Adults (Leben Home), a facility licensed by the New York State Department of Health (DOH) to provide residential treatment and care to mentally ill adults. In January 2000, Local 348–S and Leben Home, by its then-operator Jacob Rubin, entered into a collective bargaining agreement (CBA), which continues in force and effect until December 31, 2003. In relevant part, the CBA states that it "shall be binding on the parties hereto, and their successors and assigns" and provides for arbitration of grievances.

On May 3, 2001, as a result of numerous and severe violations that posed "a danger to the physical or mental health of the Facility residents," the DOH and Rubin entered into a Stipulation and Order, by which Rubin agreed to surrender his operating certificate for Leben Home. Pursuant to that Order, the DOH appointed MediSys, a non-profit corporation that manages a number of private-sector care facilities in New York, as the temporary operator of Leben Home while Rubin looked for a buyer. The May 3 Order directed MediSys to "take such steps as it deems necessary to conduct the day-to-day operation of the Facility and, in consultation and subject to the direction of the Department, to evaluate the care needs of each individual resident . . . ." The Order also provided that MediSys shall not "incur any liability for any liability, act or omission of the Facility or its operator prior to the effective date of this Stipulation and Order."

MediSys operated Leben Home until the end of February 2002, including paying "the wages, fringe benefits, other payroll items and related withholding taxes through and including February 28, 2002." Beginning March 1, 2002, Hofgur LLC began operating Leben Home, under the new name of Queens Adult Care Center.

In May 2002, Local 348–S served Queens Adult Care Center, MediSys and Leben Home with a Notice of Intention to Arbitrate pursuant to the CBA and N.Y. C.P.L.R. 7503(c). The union sought to recover benefits and amounts owed it and its members under the CBA. According to the union, during the period between January 2000 and May 2002, a number of employee benefits were not fully paid and remain unpaid, including contributions due to the union's Health and Welfare Fund and a $100 monthly payment due to workers who opted out of the Fund. The union apparently seeks sums mostly for the period before and after MediSys's operation of Leben Home.[1]

---

1. It is undisputed that the union seeks to hold MediSys, along with Rubin and the Queens Adult Care Center, liable for all of the claimed sums. At oral argument, the union conceded that most of the claims are for sums predating

MediSys's appointment, but argued that unpaid vacation benefits and opt-out payments had also accrued during MediSys's operation of Leben Home. It is also apparent from the record that the union notified MediSys of its

Thereafter, MediSys filed a petition in the New York State Supreme Court, Queens County, for (1) a permanent stay of arbitration under N.Y.C.P.L.R. 7503 on the ground that there was no agreement to arbitrate between Local 348–S and MediSys; or alternatively, (2) a stay of arbitration with respect to any obligations or liabilities of Leben Home before or after the appointment of MediSys as temporary operator. After the New York State Employment Relations Board requested selection of arbitrators, MediSys sought a temporary restraining order (TRO) prohibiting Local 348–S from further pursuing arbitration. The state court granted the TRO on June 3, 2002 and set a hearing date on MediSys's petition for a stay on June 13. Before that date, Local 348–S removed the action to the district court, asserting federal jurisdiction under § 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a),[2] and cross-petitioning to compel arbitration under the CBA.

MediSys then moved in the district court under Fed.R.Civ.P. 12(b)(1) to dismiss the action for lack of subject matter jurisdiction and remand the case to state court, on the ground that MediSys was not an "employer" within the meaning of the LMRA. Alternatively, MediSys moved under Rule 56 for a permanent stay of arbitration.

The union argued that MediSys was an employer and cross-moved for summary judgment compelling arbitration. On August 23, 2002, the district court heard argument on the various matters before it, and on August 28 issued a Memorandum and Order granting MediSys's motion to remand the case to state court and denying all other motions as moot.[3] The district court held that because "MediSys was appointed by, and is responsible to, public officials" it came within the "political subdivision" exception to the meaning of "employer" as defined in the LMRA.[4] Accordingly, the district court held that it lacked subject matter jurisdiction over the case and remanded it to the state court. In September 2002, the court denied Local 348–S's motion for reconsideration.

This appeal by the union followed.

## II. Discussion

Local 348–S asks this court to review the district court's order remanding the case to state court. The union contends that the district court erred in its determination that under the LMRA MediSys is a political subdivision, not an employer.

The threshold question on this appeal is whether we have jurisdiction to review the district court's remand order. Our appel-

---

claims under the CBA at the time MediSys began operating Leben Home. It was MediSys's position then, as now, that pursuant to the May 3 Order it was not responsible for previous liabilities incurred by Rubin.

**2.** The statute provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court without respect to the amount in controversy or without regard to the citizenship of the parties.

**3.** Thus, the district court did not reach the underlying question of whether MediSys had a duty to arbitrate under the CBA on the basis of successor liability.

**4.** Section 2(2) of the LMRA, 29 U.S.C. § 152(2), provides in relevant part:

The term "employer" includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof . . . .

late jurisdiction in this context is circumscribed by statute. "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," 28 U.S.C. § 1447(d), if the order is based on lack of subject matter jurisdiction or defects in the removal procedure, 28 U.S.C. § 1447(c). See *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 711–12, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (Section 1447(d) "must be read *in pari materia* with § 1447(c), so that only remands based on grounds specified in § 1447(c) are immune from review under § 1447(d)."); see also *Excimer Assoc., Inc. v. LCA Vision, Inc.*, 292 F.3d 134, 138 (2d Cir.2002) (per curiam) (dismissing an appeal from an order remanding the case to state court for lack of jurisdiction).

Local 348–S concedes that remand orders based on lack of subject matter jurisdiction are generally not reviewable. It claims, however, that § 1447(d) does not bar review of a remand order that is based on a separate finding involving the merits of the action. In that context, the union argues, the district court's order is reviewable as a collateral final order under 28 U.S.C. § 1291.

■ The collateral order doctrine "allows an appellate court to hear an otherwise nonappealable judgment 'if the order conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and is effectively unreviewable on appeal from a final judgment.'" *Excimer*, 292 F.3d at 138 (quoting *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 748 (2d Cir.1991)). In *Excimer*, we held that a district court's decision to join a party as a necessary party, thereby defeating complete diversity, did not "conclusively determine the disputed question" of whether that party was in fact necessary.[5] *Id.* at 139. For the collateral order doctrine to apply, we explained, a decision that a defendant seeks to have reviewed under § 1291 must be "separate from the question of the district court's subject matter jurisdiction." *Id.*

If the court looks to an issue *for the purpose of* determining subject matter jurisdiction, the issue is not separable because it cannot be said to have preceded the remand decision "in logic *and in fact.*" If, however, ... the issue has independent relevance in adjudging the rights of the parties (i.e. relevance beyond determining the existence of federal subject matter jurisdiction), the decision is separable ... even if it also happens to have an incidental effect on the court's jurisdiction.

*Id.* (quoting *Powers v. Southland Corp.*, 4 F.3d 223, 228 (3d Cir.1993)).

■ It is clear that in this case the district court, in addressing MediSys's motion to remand, looked to the issue of whether MediSys is a "political subdivision" under the LMRA *"for the purpose of* determining subject matter jurisdiction." The court's findings regarding the political

---

5. As we noted in *Excimer*, "[w]e have not found a single case in which this Court has invoked the collateral order doctrine to confer appellate jurisdiction where the district court's remand order was based on a determination that it lacked subject matter jurisdiction." 292 F.3d at 138. Courts disagree over whether a remand order is reviewable as a collateral final order. Compare *Adkins v. Ill. Cent. R.R. Co.*, 326 F.3d 828, 832–33 (7th Cir.2003) (Absent a narrow exception for abu-

sive situations, "an order resolving a dispute over where litigation shall proceed is not an appealable final order, nor does it fall within the exception carved out by the collateral order doctrine ...."), with *Powers v. Southland Corp.*, 4 F.3d 223, 231 (3d Cir.1993) (concluding that collateral order doctrine is applicable to remand orders that satisfy three-pronged test of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)).

subdivision issue "were merely subsidiary legal step[s] on the way to its determination that the case was not properly removed." *Nutter v. Monongahela Power Co.*, 4 F.3d 319, 321 (4th Cir.1993) (concluding that "the [district] court's findings regarding preemption and jurisdiction are indistinguishable") (internal quotation marks and citation omitted).

Nevertheless, Local 348–S relies heavily on the Supreme Court's decision in *City of Waco v. United States Fidelity & Guaranty Co.*, 293 U.S. 140, 55 S.Ct. 6, 79 L.Ed. 244 (1934), to argue that the district court's remand order has "independent relevance" such that we have jurisdiction to review it. However, *Waco* is distinguishable from this case. The underlying action in *Waco* involved a claim of negligence by a citizen of Texas against the City of Waco, Texas. The City "by cross-action vouched in the Fidelity Company," a citizen of Maryland. *Id.* at 141, 55 S.Ct. 6. Fidelity removed the case to federal court, claiming that "as to it a separable controversy existed." *Id.* The district court remanded the case to state court for lack of diversity jurisdiction after deciding Fidelity was an unnecessary and improper party and dismissing the cross-claim. The Fifth Circuit dismissed the City's appeal, 67 F.2d 785 (5th Cir.1933). However, the Supreme Court held that the district court's order of dismissal, but not the remand order itself, was appealable because "in logic and in fact the decree of dismissal preceded that of remand." 293 U.S. at 143, 55 S.Ct. 6. The Court in *Waco* emphasized that without appellate review the dismissal would be "conclusive upon the petitioner [the City]" since "the cross-ac-

tion will be no part of the case which is remanded to the state court." *Id.*

Similarly, in a more recent case, *Carr v. American Red Cross*, 17 F.3d 671, 680 (3d Cir.1994), the Third Circuit exercised appellate jurisdiction over a remand order where the district court had dismissed a cross-claim against the Red Cross, thus eliminating the basis for federal jurisdiction over the case. The Third Circuit held that the district court's order dismissing the cross-claim, which could not be litigated in the state court because it was not remanded, had "independent relevance in adjudging the rights of the parties." *Id.* at 675.

By contrast, the district court's decision in the case before us has no such "independent relevance." Unlike the situation in *Waco* and *Carr*, the court here did not dismiss a party or claim from the case before remanding it. Rather, the court remanded the case in its *entirety* to state court.[6] Other courts have recognized a *Waco* exception to § 1447(d)'s bar on appellate jurisdiction, but have also interpreted it narrowly. See, e.g., *Powers*, 4 F.3d at 235 ("The Court's decision in *City of Waco* was premised on its conclusion that the entire case had not been remanded to the state court."); *Nutter*, 4 F.3d at 321 (explaining that "most decisions applying *Waco* have involved orders dismissing some party or claim").

Local 348–S contends, however, that the district court's conclusion that MediSys is a political subdivision, and therefore not an employer within the meaning of the LMRA, will affect its substantive rights in state court, by preventing it from raising

---

**6.** Our decision in *Board of Managers of 2900 Ocean Ave. Condominium v. Bronkovic,* 83 F.3d 44 (2d Cir.1996) (per curiam), is instructive. Although we dismissed the appeal from an order remanding the case for lack of subject matter jurisdiction, we reviewed the por-

tion of the order enjoining defendants from removing any case to the district court without express permission. The order to enjoin could not be remanded to state court, which has no authority over possible contempt findings in federal court.

defenses and/or claims based on federal law. But this contention is inconsistent with the logic of our conclusion that the district court's decision regarding the political subdivision issue is inseparable from the jurisdictional issue.[7] Local 348–S could only be prevented from raising defenses and/or claims based on federal law in state court if principles of issue preclusion, or collateral estoppel, applied to the district court's "jurisdictional findings incident to remand". *Nutter*, 4 F.3d at 322. We conclude they do not.[8]

We have said that " § 1447(d) prohibits review of all remand orders issued pursuant to § 1447(c) *whether erroneous or not.*" *Excimer*, 292 F.3d at 139 (quoting *Thermtron Prods. Inc. v. Hermansdorfer*, 423 U.S. 336, 343, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976)) (emphasis added in *Excimer*). "Under contemporary principles of collateral estoppel," the unavailability of appellate review of remand orders under § 1447(d) " 'strongly militates against giving' a judgment preclusive effect," *Nutter*, 4 F.3d at 322 (internal citation omitted), and thus "any issues that the district court decided incident to remand may be relitigated in state court." *Id.* See *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir.1986) ("[I]nability to obtain appellate review, or the lack of such review once an appeal is taken, does prevent preclusion.");

accord *People v. Sailor*, 65 N.Y.2d 224, 228–29, 491 N.Y.S.2d 112, 480 N.E.2d 701 (1985). Moreover, we note that § 1447(d) serves the important but limited purpose of "expedi[ting] the process of choosing a forum for litigation." *Adkins v. Ill. Cent. R.R. Co.*, 326 F.3d 828, 832 (7th Cir.2003). As the Seventh Circuit recently explained,

> a litigant is entitled to remove a case from state court (a very mechanical procedure), to have a federal court test the propriety of the removal, and then to proceed with the case in either the federal court or the state court without further ado. The only thing that is at stake is the forum that will hear a claim.

*Id.* Here, the district court, correctly or not, has determined pursuant to § 1447(d) that this case will go forward in the state court.[9] Accordingly, we dismiss the appeal for lack of appellate jurisdiction.

---

7. Local 348–S does not argue in this court that the district court would have had original jurisdiction pursuant to 28 U.S.C. § 1331. We hold only that the political subdivision issue is inseparable from the question of the district court's jurisdiction under 29 U.S.C. § 185(a).

8. At oral argument, MediSys apparently agreed that the district court's decision on the political subdivision issue would not have preclusive effect, because it was "not final" and was "part and parcel of the subject matter jurisdiction decision."

9. We thus do not consider the merits of the union's arguments that (1) the district court erred in characterizing MediSys as a political subdivision of the State and therefore not an employer under the LMRA, in view of the National Labor Relations Board's restrictive interpretation of the exceptions to the definition of "employer", cf. *Arco Mgmt. Corp. v. Bevona*, 215 F.Supp.2d 407 (S.D.N.Y.2002); and (2) MediSys had a duty to arbitrate under the CBA on the basis of successor liability.