**In re TELLURIDE INCOME GROWTH LP, Debtor.**

**Telluride Asset Resolution, LLC, Plaintiff–Appellant,**

**Moving Limited Partners, Plaintiffs–Appellees,**

**and**

**Dennis Bullock, Lambie Bullock, Louis Duval, Muriel Jean Duval, Steve Hinkle, Mary L. Hinkle, Jerry D. James, Michael Milburn, Kenneth R. Miller, Eugene C. Moravec, Alda Moravec, Michael E. Monoscalco, Madelyn J. Monoscalco, Jill Marie Monoscalco, Laura C. Monoscalco, Joseph R. Nardone, Ralph Edward Preston, Ken E. Rhode, Kevin D. Sorbo, Oliver James**

---

Sterling, II, Oliver James Sterling, III, Vanessa Ruth Sterling, Brendan D. Thompson Ira, Sandra R. Tingle, William Tuczynski, R.M. Yost Ira, R. Michael Yost, Roselva M. Yost, Plaintiffs,

v.

Telluride Global Development, LLC, Defendant–Appellant,

and

Telluride Income/Growth Limited Partnership, Peak Returns L.L.C., Western Slope L.L.C., Lorraine Development L.L.C., Mountain Village Construction Company, Inc., William Baird, Bruce Bjork, Hamish Cruden, Ed Tompkins, Scott T. Sogard, The Pueblo Bank And Trust Company, Weststar Bank, Ballard House South Homeowner's Assoc. Inc., The Bauhinia Limited, Public Trustee of San Miguel County, Cruman Investments, Bianca Overseas Investments, Inc., Glenn Trotman, Nancy Louise Powell, Nigel Louis Ian Kat, Yoriko Soma, Peter E. Eadon–Clarke, Laidley Holdings Limited, Liza Jane Mary Cruden, Thomas Alexej Hall, Christopher John Parker, E–Global Trading, Bank of New York, Indymac Mortgage Holdings, Inc., Banque Nationale De Paris, Community First National Bank, E–Global Development Limited, Ann P. Fleckles, Anna Medrin, Mike Galvin, Anita Galvin, The Estate of Howard R. Hornback, James Trichak, Timothy O'Mara, Jerome Kraft, Marc Mendelsohn, Dennis Scholtz, Christina Lee, Rita Coker, Curt Simmons, Cynthia Simmons, Sal–Don Pension Plan, Don G. Lyle, John Lyle, Howard W. Nutt, Carl E. Bornhouser, Amporn Somsin, Donald Turntine, Janice Turntine, June Somsin, Jesse

J. Ford Keogh, Mark Voss, Andrew B. Glaus, James E. Haynes, Diane Shantie, Bill Von Dielingen, Jerry Allen Lee, Pakaharn Somsin, Raymond M. Locker, Ben K. Boreyko, Charles Nelson, Laurie A. Laurie, Creative Investments (Gary Larson), Barbara Chase, Jason Boreyko, Defendants.

BAP No. CO–06–006.
Bankruptcy No. 03–31600–ABC.
Adversary No. 04–1830–ABC.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

March 5, 2007.

John C. Smiley of Lindquist & Vennum P.L.L.P, Denver, CO (Michael Gilbert, Esq., of Reed & Fanos, Ouray, Colorado with him on the briefs), for Plaintiff–Appellant, Defendant–Appellant, and Defendants.

Steven R. Fox, Encino, CA (Joseph Solomon of Solomon & Solomon, Telluride, Colorado with him on the briefs), for Plaintiffs–Appellees and Plaintiffs.

Before McFEELEY, Chief Judge, THURMAN, and SOMERS[1], Bankruptcy Judges.

## OPINION

McFEELEY, Chief Judge.

Plaintiff/Appellant Telluride Asset Resolution, LLC ("TAR") and Defendant/Appellant Telluride Global Development, LLC ("TGD") (hereinafter, when referred to jointly, "Appellants") appeal two orders of the bankruptcy court for the District of Colorado. The first order dismissed part of an adversary proceeding and abstained from lifting a preliminary injunction. The second order remanded certain equitable breach of contract claims to the Colorado state court. The Appellants argue that the bankruptcy court erred in entering these orders because a previously entered sale order provided that the debtor's assets were to be sold free and clear of all liens; therefore, there were no remaining issues to be decided by the state court. Finding no error, we affirm the appeal of the first order and we dismiss the appeal of the second order.

### I. *Background*

The Debtor, Telluride Income Growth LP ("Debtor"), was formed to acquire, develop, and sell real property in Telluride, Colorado in 1991. Several limited partners invested approximately $1.6 million in the purchase of real property and the initial development of two residential condominium units known jointly as the Ballard House. Ultimately, due to lack of funding, TGD acquired title to the unsold units in the Ballard House project.

In October 2002, twenty-five of the Debtor's limited partners (the "Limited Partners") commenced litigation in Colora-

**1.** Honorable Dale L. Somers, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Kansas, sitting by designation.

do state court ("State Court Litigation") against, among others, the Debtor and TGD. They listed several derivative causes of action and an action for foreclosure of an equitable lien against the Ballard House project which the Limited Partners claimed they held personally. During the state court proceedings, the state court imposed a preliminary injunction.

In October 2003, an involuntary Chapter 7 case was filed by several of the Debtor's creditors. Despite the Limited Partners' resistance, an order for relief was entered and a Chapter 7 Trustee ("Trustee") appointed. On September 1, 2004, the Trustee removed the State Court Litigation to bankruptcy court.

Subsequently, the Trustee entered into an agreement to sell all of the Debtor's assets including the Debtor's interest in the State Court Litigation to TAR. The Trustee moved for an order approving the sale. Following an evidentiary hearing and briefing, the court approved the sale. The sale order states:

> Pursuant to 11 U.S.C. [ ] § 363(b) and (f), the Assets shall be transferred to Purchaser, *provided however,* that the Trustee *is empowered to transfer only property of the Debtor's estate,* as defined in section 541 of the Bankruptcy Code. As of the Closing Date, the Assets shall be transferred to Purchaser, pursuant to section 36 g(f) of the Bankruptcy Code, free and clear of all interests ... and liens....

*See* Order Under 11 U.S.C. § 363, And Fed. R. Bankr.P.2002, 6004, 9014 And 9019(a), (A) Approving Agreement To Acquire Assets And Release Claims; And (B) Authorizing (I) Transfer Of Certain Of Debtor's Assets Free And Clear Of Liens, Claims, Interests And Encumbrances, And (II) Mutual Release Of Claims ("Sale Order") at 4, ¶ 6, *in* Appellants' Appendix, Vol. 5, at 1691 (second emphasis added).

The Sale Order does not address nor does it purport to convey to TAR the Limited Partners' personal action to foreclose their alleged equitable lien on the Ballard House project.

In October 2005, TAR, as successor to the Trustee in the adversary proceeding, moved to vacate the preliminary injunction that had been issued in the state court prepetition, release to the Limited Partners the bond that had been required as a condition of the preliminary injunction, and dismiss the adversary proceeding. In opposition, the Limited Partners moved to remand the adversary proceeding to the state court, specifically their remaining non-derivative claim, stating that after TAR's purchase of the Debtor's assets, the adversary proceeding was now non-core and unrelated to the bankruptcy.

The bankruptcy court found that while it may not have had subject matter jurisdiction to adjudicate any remaining disputes that did not belong to the bankruptcy estate, it had core jurisdiction to determine how the adversary proceeding would be removed from its docket. The bankruptcy court orally ruled as follows: all TAR claims including claims originally asserted by the Limited Partners as derivative claims were dismissed without prejudice; all Limited Partners' direct claims and any counterclaims against the Limited Partners were remanded to state court; the court abstained from ruling on the preliminary injunction and return of the bond and left that to be determined by the state court on remand. The bankruptcy court's oral rulings were memorialized in written orders entered January 17, 2006, entitled: Order on Motion to Dissolve Preliminary Injunction, Release Bond and Dismiss without Prejudice, and Order Granting Motion to Remand Proceeding to Colorado State Court.

This appeal timely followed. We observe for the purpose of clarity that TGD was a defendant in both the state court case and in the original adversary proceeding based on its ownership interest in the Ballard House. In this appeal, TGD joins TAR as an Appellant. The parties have consented to this Court's jurisdiction because they did not elect to have the appeal heard by the United States District Court for the District of Colorado. 28 U.S.C. § 158(c)(1); Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1.

## II. *Discussion*

Before us are two orders: (1) Order on Motion to Dissolve Preliminary Injunction, Release Bond and Dismiss Without Prejudice ("Abstention Order"); (2) Order Granting Motion to Remand Proceeding to Colorado State Court ("Remand Order"). In the Abstention Order, the bankruptcy court dismissed without prejudice all claims held by TAR and abstained from dissolving the state court injunction or releasing the bond; in the Remand Order, the bankruptcy court remanded all claims that were not claims or derivative claims of the estate to the state court. We will address each Order in turn.

■■■■ As an initial matter, the Appellees argue that the Abstention Order is not ripe for review because it is not a final order and does not meet the criteria of the collateral order doctrine. This Court, with the consent of the parties, has jurisdiction to hear appeals "from final judgments, or-

ders, and decrees," and "with leave of the court, from other interlocutory orders and decrees" of bankruptcy judges within this circuit. 28 U.S.C. § 158(a), (b)(1).[2] A court order is a "final judgment" if it " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Cunningham v. Hamilton County*, 527 U.S. 198, 203–04, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988)). The Appellees argue that the Abstention Order is not such a final order because it does not end the litigation but leaves the matter to be concluded in state court.

■■■ In *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996), the Supreme Court delineated two tests for determining whether an abstention or remand order is immediately appealable.[3] An abstention order will be immediately appealable if it effectively puts the litigants out of court by surrendering "jurisdiction of a federal suit to a state court." *Id.* at 714, 116 S.Ct. 1712 (citation omitted). Alternatively, an abstention order will be immediately appealable if it fits within the criteria of the collateral order doctrine.

■■■ The collateral order doctrine is judicial recognition of a small class of decisions "which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of

---

**2.** 28 U.S.C. § 158(a) provides:

The district courts of the United States shall have jurisdiction to hear appeals
(1) from final judgments, orders, and decrees; [and]
. . . .
(3) with leave of the court, from other interlocutory orders and decrees[.]

28 U.S.C. § 158(c)(1) grants a Bankruptcy Appellate Panel the jurisdiction to hear appeals under subsection (a).

**3.** *Quackenbush* examined whether such orders could be appealed under 28 U.S.C. § 1291, which provides the criteria for appeals of district court decisions. Bankruptcy court decisions are reviewable under an analogous provision found in 28 U.S.C. § 158(a).

the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). For an order to come under this doctrine, the order in question "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). If the order does not meet all of these requirements, it is not an appealable order under the collateral order doctrine. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 276, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988).

In *Quackenbush,* the Supreme Court found that a decision to abstain and remand fit within the parameters of the collateral order doctrine because "it conclusively determines an issue that is separate from the merits, namely, the question whether the federal court should decline to exercise its jurisdiction in the interest of comity and federalism" and the issue would be otherwise effectively unreviewable on appeal from a final judgment on the merits. *Quackenbush,* 517 U.S. at 714, 116 S.Ct. 1712; *see also Personette v. Kennedy (In re Midgard Corp.),* 204 B.R. 764, 768–69 (10th Cir. BAP 1997) (holding that a bankruptcy court's orders refusing to abstain were reviewable under the collateral order doctrine because they conclusively determined the disputed issue of bankruptcy court jurisdiction, resolved an important issue separate from the merits of the underlying litigation, and would be effectively unreviewable on appeal).

In the appeal before us, in support for its decision to abstain, the bankruptcy court stated, "[t]he Court concludes that these matters are best left to the state

court[.]" Transcript of Motions Hearing on December 14, 2005 ("Transcript"), at 26, *ll.* 14–15, *in* Appellants' Appendix, Vol. 5, at 1645. The basis for this decision appears to be comity. The decision to abstain from deciding any of the other issues in the adversary proceeding conclusively determines an issue separate from the merits of the underlying proceeding. This case is analogous to *Quackenbush;* it is an appeal of a decision to abstain that will be effectively otherwise unreviewable on appeal. The Abstention Order thereby fits within the parameters of the second *Quackenbush* test, and is ripe for our review.

 Next, Appellants argue that the bankruptcy court erred in entering the Abstention Order because the bankruptcy court abstained from hearing a core matter. Abstention is addressed in 28 U.S.C. § 1334(c)(1), (2). Abstention, like many bankruptcy provisions, begins with a distinction between core and non-core proceedings. Under 28 U.S.C. § 157(b)(1) bankruptcy courts "may hear and determine all cases under [T]itle 11 and all core proceedings arising under [T]itle 11 or arising in a case under [T]itle 11 … and may enter appropriate orders and judgments…." Core proceedings are proceedings that involve rights created by bankruptcy law or which only arise in a bankruptcy proceeding. *Gardner v. United States (In re Gardner),* 913 F.2d 1515, 1518 (10th Cir.1990). Basically, bankruptcy courts have core jurisdiction over all cases that satisfy one of the following three criteria: (1) cases under Title 11; (2) proceedings arising under Title 11; (3) proceedings arising in a case under Title 11. *In re Resorts Int'l, Inc.,* 372 F.3d 154, 162 (3d Cir.2004) (citation omitted). The term " 'arising in' refers to administrative matters that are not based on any right expressly created by [T]itle 11 but

would nevertheless have no existence outside of the bankruptcy case." *In re ACI–HDT Supply Co.*, 205 B.R. 231, 234–35 (9th Cir. BAP 1997). Bankruptcy courts have full adjudicative power over core proceedings. *Resorts Int'l*, 372 F.3d at 162.

Non-core proceedings can exist independent from the bankruptcy proceeding, as they do not invoke substantive rights created by the bankruptcy. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987). "The bankruptcy court has jurisdiction over non-core proceedings when they are related to the bankruptcy in that they could conceivably have an effect on the bankruptcy estate." *Gregory Ranch v. Lyman (In re Gregory Rock House Ranch, LLC)*, 339 B.R. 249, 253 (Bankr. D.N.M.2006). In a non-core proceeding, unless the parties consent to entry of a final order of judgment by the bankruptcy judge, the bankruptcy court "shall submit proposed findings of fact and conclusions of law to the district court." 28 U.S.C. § 157(c)(1).

Section 1334(c)(1) permits abstention from core matters and non-core matters when it is in the "interest of justice," judicial economy, or respect for state law ("permissive abstention"). Section 1334(c)(2) pertains only to non-core matters and provides guidelines for when a bankruptcy court must abstain ("mandatory abstention"). Mandatory abstention applies when all of the following elements are present: (1) the motion to abstain was timely; (2) the action is based on state law; (3) an action has been commenced in state court; (4) the action can be timely adjudicated in state court; (5) there is no independent basis for federal jurisdiction other than bankruptcy; (6) the matter is non-core. *Midgard*, 204 B.R. at 779. Abstention applies to proceedings removed to bankruptcy courts. *Id.* at 774. Under *Midgard*, we review a bankruptcy court's decision on whether to abstain de novo. *Id.* at 770.[4]

The Appellants argue that the bankruptcy court incorrectly abstained because the issues were part of a core proceeding that should have remained in the bankruptcy court because the bankruptcy court was in the best position to enforce its orders. Alternatively, they argue that if it was a non-core proceeding, all of the elements of mandatory abstention were not met.

The bankruptcy court did not cite under which section it abstained in the Abstention Order. However, it did state that it was abstaining because "[t]he Court concludes that these matters are best left to the state court[.]" Transcript at 26, *ll.* 14–15, *in* Appellants' Appendix, Vol. 5, at 1645. Because the basis for this decision is comity, the bankruptcy court abstained under § 1334(c)(1), permissive abstention. Under this section a bankruptcy court may abstain from *both* core and non-core matters.[5] The Appellants do not identify and

---

4. *But see Coker v. Pan Am. World Airways, Inc. (In re Pan Am. Corp.)*, 950 F.2d 839, 844 (2d Cir.1991) (stating in a case decided prior to the amendment to the Bankruptcy Code which precludes appellate review of decisions to abstain under § 1334(c)(1), that review under this section should be under the abuse of discretion standard); *accord In re Delta Towers, Ltd.*, 924 F.2d 74, 79 (5th Cir.1991); *In re Colarusso*, 295 B.R. 166, 178 (1st Cir. BAP 2003), *aff'd*, 382 F.3d 51 (1st Cir.2004).

5. We note that the Appellants misunderstand the provisions of mandatory abstention. The mandatory abstention provision, § 1334(c)(2), delineates the requirements when a bankruptcy court *must* abstain from hearing non-core matters. However, the provisions of § 1334(c)(2) do not prohibit a bankruptcy court from abstaining from hearing a non-core matter under § 1334(c)(1).

we do not find any reasons as a matter of law why the bankruptcy court erred when it concluded that the state court was in a better position to determine whether to dismiss the preliminary injunction imposed by the state court and release the bond that the state court had put in place.

Alternatively, the Appellants argue that the bankruptcy court erred in abstaining because the Limited Partners' rights had already been adjudicated in the sale order under § 363(f); therefore, the bankruptcy court had the subject matter jurisdiction to enforce its orders, or alternatively, the motion to remand was not timely made and the state court could not timely adjudicate the issue. In this argument the Appellants conflate the appeal of the Abstention Order with that of the Remand Order. The Abstention Order does not remand the Limited Partners' third party claims; it dismisses part of the adversary proceeding and abstains and remands to the state court for a ruling on lifting the preliminary injunction or releasing the bond.

■ In addressing the Remand Order, we must make an initial determination as to whether we have jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (a federal appellate court must determine whether it has jurisdiction over an appeal); *City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1045 n. 8 (10th Cir.1994) (same); *Midgard*, 204 B.R. at 767–68 (same). In the Remand Order the bankruptcy court remands "all direct claims by the Moving Limited Partners, if

any, and any counterclaims thereto, if any ... provided, however, that claims against the Debtor, if any, shall be resolved in this Court." Order Granting Motion To Remand Proceeding To Colorado Supreme Court at 1–2, *in* Appellants' Appendix at 1607–08. The Remand Order remands only those claims held by the moving Limited Partners against third parties who no longer have any claims or interests within the bankruptcy.

■ Bankruptcy courts may remand previously removed cases to a state court under 28 U.S.C. § 1452. 28 U.S.C. § 1452(b); *see also Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). Under § 1452(b), a court may remand a case that has been removed from state court on "any equitable ground." While a "court of appeals" may not review a decision to remand under this section, there is no prohibition of review by a district court or a bankruptcy appellate panel. However, § 1452 is not the exclusive provision governing appellate review of remands in bankruptcy. Another provision governing appellate review of remands in previously removed cases is found in 28 U.S.C. § 1447(d).

■ Under § 1447(d), any appellate review of orders to remand is precluded if the order is based on a procedural defect or lack of subject matter jurisdiction.[6] *See In re Richardson*, 319 B.R. 724, 729 (S.D.Fla.2005). This section does not use the term "court of appeals" but prohibits any review on appeal.[7] At least one dis-

---

6. Pursuant to § 1447(c), previously removed cases must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." The party removing the action bears the burden of establishing federal jurisdiction. Section 1447(c) must be read in pari materia with § 1447(d). *See Thermtron Prods., Inc. v.*

*Hermansdorfer*, 423 U.S. 336, 345–46, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976). Section 1447(d) provides "(a)n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise[.]"

7. The restrictions on appellate review set forth in 28 U.S.C. § 1447(d) are subject to the

trict court has found that this section prohibits any review, including review by a district court of a bankruptcy court order entered on that basis. *Id.* This prohibition applies even if the appellate court believes that the lower court was in error. *See Kennedy v. Lubar,* 273 F.3d 1293, 1297 (10th Cir.2001).

■ The provisions of § 1447(d) are applicable in bankruptcy. "Section 1447(d) applies 'not only to remand orders made in suits removed under [the general removal statute], but to orders of remand made in cases removed under any other statutes, as well.'" *Things Remembered,* 516 U.S. at 128, 116 S.Ct. 494 (alteration in original) (emphasis omitted) (citing *United States v. Rice,* 327 U.S. 742, 752, 66 S.Ct. 835, 90 L.Ed. 982 (1946)). An order remanding a case under § 1452(b) based on lack of subject matter jurisdiction is subject to the provisions barring review of such decisions under § 1447(d). *Things Remembered* at 129, 116 S.Ct. 494.

In its oral findings regarding the Remand Order, the bankruptcy court found that the bankruptcy estate was no longer a party to the remaining claims in the adversary proceeding and the remaining claims did not involve the bankruptcy estate. Transcript at 23, *ll.* 8–15, *in* Appellants' Appendix at 1642. This was, in effect, a determination that it did not have subject matter jurisdiction over these claims. That being the case, § 1447(d) precludes our review of the Remand Order.

■ Courts have applied one exception to the general prohibition found in § 1447: the "substantive law exception." The substantive law exception permits review of an order that dismisses a claim

that precedes the order of remand. *City of Waco v. U.S. Fid. & Guar. Co.,* 293 U.S. 140, 143, 55 S.Ct. 6, 79 L.Ed. 244 (1934). In *Waco,* the district court dismissed a third party, thereby eliminating diversity, and then remanded the case based on lack of jurisdiction. *Id.* at 142, 55 S.Ct. 6. The Supreme Court held that while no appeal could lie from the remand order, the decree of dismissal preceded that of remand and was appealable. *Id.* at 143, 55 S.Ct. 6. Pursuant to *Waco,* the substantive issue must be separable from the decision to remand. *Cf. In re Richardson,* 319 B.R. at 728 (concluding that the bankruptcy court's finding that the parties had no standing to pursue an action in bankruptcy court was not separable from the decision to remand). "If the court looks to an issue for the purpose of determining subject matter jurisdiction, the issue is not separable because it cannot be said to have preceded the remand decision 'in logic and in fact.'" *Carr v. Am. Red Cross,* 17 F.3d 671, 675 (3d Cir.1994) (emphasis omitted). In contrast, if the issue has relevance in determining the rights of the parties, independent from the issue of federal subject matter jurisdiction, the decision is separable and may be reviewed under the substantive law exception. Generally, the exception is employed only when the lower court dismisses a party or claim from a case before remanding it. *Medisys Health Network, Inc. v. Local 348–S United Food & Commercial Workers, AFL–CIO & CLC,* 337 F.3d 119, 123 (2d Cir.2003). The substantive law exception is interpreted narrowly. *Id.*

Although the Appellants do not invoke the substantive law exception, essentially, they claim this exception in their argument that the remand ignores the fact that the

three following statutory exceptions: civil rights cases; cases involving the Resolution Trust Corporation; cases involving the Federal Deposit Insurance Corporation. The first

exception is referenced in § 1447(d). The latter two exceptions are found in the statutes empowering the corporations. None of these exceptions are applicable here.

sale was free and clear of all liens or claims. The Appellants argue that after the sale there were no claims for the bankruptcy court to remand because the Sale Order sold the litigation rights free and clear of all liens and claims and thus, eliminated all liens and claims of the Limited Partners, both derivative and non derivative. While we express no opinion as to the validity of the Limited Partners' non-derivative claims, we disagree with the Appellants' premise. In the Sale Order the bankruptcy court stated:

> "Nothing in this Order or in the Agreement shall affect the claims of any entity who is not a signatory to the Agreement against any other entity, provided however, the Agreement and transactions authorized by this Order expressly dispose of all claims of this bankruptcy estate that have previously been, or could have been, asserted *derivatively* on behalf of the Debtor."

Sale Order at 4, ¶ 10, *in* Appellants' Appendix, Volume 5, at 1691 (emphasis added). Additionally, in its oral findings in the Remand Order, the bankruptcy court stated: "I am not ruling today nor have I previously addressed the viability of any [L]imited [P]artnership nonderivative claims. This Court has not addressed direct claims of [L]imited [P]artners in the [removed action] or otherwise." Transcript at 24, *ll.* 19–22, *in* Appellants' Appendix, Vol. 5, at 1643. The bankruptcy court clearly did not rule on the viability of the Limited Partners' asserted third party beneficiary status. Those asserted claims remained for remand.

Alternatively, the Appellants argue that the motion to remand was not timely made and the state court cannot timely adjudicate the issue. This argument is grounded on case law surrounding a bankruptcy court's decision to abstain from determining certain issues, and is irrelevant to a decision to remand based on a lack of subject matter jurisdiction. In sum, the Appellants have not established an exception to the prohibition stated in § 1447.

### III. *Conclusion*

For the reasons set forth above, we affirm the bankruptcy court's Order on Motion to Dissolve Preliminary Injunction, Release Bond and Dismiss Without Prejudice. Because we lack the jurisdiction to review the Order Granting Motion to Remand Proceeding to Colorado State Court we dismiss the appeal of that Order.

SOMERS, Bankruptcy Judge, dissenting.

I respectfully dissent from the majority's decision on the merits of the appeal from both orders. In my view, the bankruptcy court erred when ruling on the motions and remanding the adversary complaint, with the exception of the dismissed derivative claims, without addressing the effect, if any, of the Sale Order on the state law claims which were not sold to TAR. I would reverse and remand the case to the bankruptcy court with instructions to undertake that analysis.

It is necessary to recite additional facts in order to understand the basis of my position. The Debtor was formed in 1991 to acquire, develop, and sell Ballard House. Several dozen limited partners invested approximately $1.6 million in the project. After completing the South Building and while developing the North Building, Debtor ran out of funds. In October 1999, when faced with foreclosure, Debtor agreed to transfer several remaining unsold units in the South Building and the entirety of the uncompleted North Building to Western Slope, LLC. The sale agreement was called Contract For Sale and Equity Participation Agreement ("EPA"). Under the EPA, as consider-

ation for the transfer of property, Western Slope agreed to pay Debtor's existing debts on the property (at the time, over $6.4 million), to finance and complete construction of the North Building, and to deliver a Purchase Money Deed of Trust ("PMDOT") granting Debtor 80% of the net profits and Western Slope 20% of the net profits, if build-out and sale of the Ballard House occurred. Net profits were defined in Schedule C of the EPA as total project revenues less: (1) repayment of all project expenses and existing and future debt related to the obligations under the agreement; and (2) repayment of the amount of the Debtor's investors' outstanding original investment in an amount not to exceed $1.6 million, plus interest from the date of investment forward at the rate of 8%. The EPA required the PMDOT to include specific language limiting the remedies available in the event of breach of the EPA to recourse against the real property subject to the deed of trust; i.e., the Ballard House property. Debtor and Western Slope are the only named parties to both the EPA and the PMDOT.

Western Slope made no significant construction progress, and by early 2002, the primary lender, Pueblo Bank, commenced foreclosure against Western Slope. On February 15, 2002, E–Global Development Limited ("E–Global") bought the Pueblo loan for the full amount owed. Western Slope then gave E–Global a deed in lieu of foreclosure. E–Global then quit-claimed its interest to Appellant TGD. The transfer was subject to the EPA.

On October 11, 2002, twenty-five of Debtor's Limited Partners commenced the State Court Litigation in San Miguel County, Colorado, styled *Dennis Bullock, et al. v. Telluride Income/Growth Limited Partnership, Ltd., et al.,* case number 02–CV78. There were twenty-seven defendants, including E–Global, Bauhinia[1], TGD, Debtor, Western Slope, the Debtor's general partners, the Debtor's management and related entities, various lenders, and third-party purchasers of Ballard House condominium units. The complaint alleged six causes of action: (1) breach of fiduciary duty and mismanagement of partnership assets; (2) accounting by, and dissolution of, the Debtor; (3) damages for breach of the partnership agreement; (4) misappropriation and fraudulent conveyance of partnership assets; (5) self-dealing; and (6) foreclosure of an equitable lien against the undeveloped North Building and unsold units in the South Building. Although not filed as a derivative action, the complaint asserted causes of action that were in fact Debtor's claims.

Some defendants, including E–Global and TGD, sought dismissal of the foreclosure claim for failure to state a claim. The Limited Partners defended the motion by asserting that they were proper parties to foreclose a lien on Ballard House because they were third party beneficiaries of the EPA, which was secured by the PMDOT. The motion to dismiss was denied. The state court found the allegations of third party beneficiary status and entitlement to an equitable lien sufficient to withstand the motion to dismiss. The state court, upon Limited Partners' motion, granted a preliminary injunction enjoining the defendants from selling the Ballard House property and ordered the Limited Partners to deposit $25,000 or post a bond in that amount.

On October 29, 2003, E–Global, TGD, and a third party filed an involuntary

---

1. Bauhinia, Ltd., a Hong Kong corporation, was a preconstruction purchaser of interests in the North Building.

Chapter 7 petition against Debtor. The order for relief was entered on June 4, 2004. On September 1, 2004, the Chapter 7 Trustee filed a Notice of Removal of the State Court Litigation, which became the adversary proceeding that is the subject of this appeal.

During the course of the bankruptcy, Appellant TAR entered into an agreement ("Agreement") with the Trustee to purchase substantially all of the Debtor's assets.[2] The assets included were the estate's claims asserted in the State Court Litigation, including the claims asserted by the Limited Partners as derivative claims, and the Debtor's rights under the EPA. The Agreement also provided that the Trustee would release the PMDOT and any and all claims of the estate against TAR, TGD, E–Global, and Bauhinia. Under the Agreement reached with the Trustee, the estate would receive $250,000 cash and release of claims in the amount of $10,519,079.

On March 22, 2005, the Chapter 7 Trustee filed a motion pursuant to 11 U.S.C. § 105(a) and § 363 for approval of the sale. The Limited Partners objected. After four days of evidentiary hearings, the bankruptcy court on August 2, 2005, granted the motion and approved the Agreement. Findings of fact and conclusions of law were read into the record and incorporated by reference into the court's Sale Order, formally entitled Order Under 11 U.S.C. § 363, And Fed. R. Bankr.P.2002, 6004, 9014 And 9019(a), (A) Approving Agreement To Acquire Assets And Release Claims; And (B) Authorizing (I) Transfer Of Certain Of Debtor's Assets Free And Clear Of Liens, Claims, Interests And Encumbrances, And (II) Mutual Release Of Claims. The Sale Order defined Assets to mean "the Debtor's Litigation Claims, the Equity Participation Agreement, and the Purchase Money Deed of Trust release."[3] The findings in the Sale Order included the following: "The Trustee may transfer the Assets free and clear of all claims of any kind or nature whatsoever because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied."[4] As to the transfer of the Assets, the Sale Order provided in part:

> Pursuant to 11 U.S.C. §§ 363(b) and (f), the Assets shall be transferred to Purchaser, *provided however*, that the Trustee is empowered to transfer only property of the Debtor's estate, as defined in section 541 of the Bankruptcy Code. As of the Closing Date, the Assets shall be transferred to Purchaser, pursuant to section 363(f) of the Bankruptcy Code, free and clear of all interests (including claims (as defined in section 101(5) of the Bankruptcy Code) and liens (as defined in section 101(37) of the Bankruptcy Code))....[5]

No appeal was taken from the Sale Order. TAR's motion to be substituted for the Debtor in the adversary case was granted.

On October 2, 2005, TAR filed a motion to dismiss the adversary case without prejudice, release the bond, and dissolve the preliminary injunction. The Limited Partners responded by objecting to the motion and filing a motion to remand the adversary case to state court. TAR opposed remand, arguing, inter alia, that as a result of the Sale Order, it owned all claims, that the Sale Order " 'closed the book' on the

---

2. Parties to the Agreement also included TGD, E–Global, and Bauhinia.

3. Sale Order at 1, *in* Appellants' Appendix, Vol. 5, at 1682.

4. *Id.* at 3, ¶ K, *in* Appellants' Appendix, Vol. 5, at 1690.

5. *Id.* at 4, ¶ 6, *in* Appellants' Appendix, Vol. 5, at 1691.

[Limited Partners'] investment in the Debtor," and that the Limited Partners were no longer parties or real parties in interest to the adversary case.[6] The Limited Partners opposed dismissal in part because they asserted they had litigation rights that survived the sale. Oral argument was held on the two motions, which the court identified as the "flip-side to the same coin."[7] The bankruptcy court did not expressly in its oral findings or written order consider the impact of the sale on the pending claims, other than the transfer of the derivative litigation claims to TAR. Before making its rulings, the bankruptcy court made the following observations concerning the § 363 sale:

This Court has previously ruled in connection with the trustee's contested sale and settlement motion that all claims of the debtor TIGLP, including all derivative claims in [the removed action], which were moved on the filing of this case or which moved by operation of law in the filing of this case to the trustee and were sold by the trustee to Telluride Asset Resolution, LLC .... the purchaser of these claims, has now moved to dismiss them without prejudice.

I am not ruling today on—nor have I previously addressed the viability of any limited partnership nonderivative claims. This Court has not addressed direct claims of limited partners in the [removed action] or otherwise.[8]

The bankruptcy court granted TAR's motion to the extent it sought dismissal without prejudice of all claims it held as successor to the Debtor, and granted the Limited Partners' motion to remand, to the extent of all claims not sold to TAR. TAR and TGD appealed both orders, which the majority identifies as the Abstention Order and the Remand Order. The issue on appeal as stated by Appellants is: "Whether the Bankruptcy Court Erred in Remanding Part of the Adversary Proceeding to the State Court because Doing So Was Contrary to the Court's Sale Order."[9] This statement is equally applicable to the Abstention Order and the Remand Order, and therefore the two orders should be considered as a unit.[10] The parties disagree as to the meaning of the Sale Order in two closely related respects: (1) the extent of the property sold—whether all of the State Court Litigation claims, including the equitable lien claim, were sold to TAR; and (2) the operation of § 363(f)—whether the sale of the Assets free and clear of interests transferred any of the Limited Partners' claims to the proceeds of the sale.

For the reasons stated below, I would remand this case to the bankruptcy court for interpretation of the Sale Order, particularly to address whether the sale of the Assets free and clear extinguished any of the claims that, absent the sale, the Limited Partners could pursue against parties other than the Debtor. Without bankruptcy court interpretation of its own Sale Order, there is likelihood of state court findings which conflict with the actions

---

**6.** Appellants' Opposition to Motion to Remand Proceeding to Colorado State Court 4, ¶ 13–14, *in* Appellants' Appendix, Vol. 5, at 1514.

**7.** Transcript at 2, *ll.* 12–13, *in* Appellants' Appendix, Vol. 5, at 1621.

**8.** *Id.* at 24, *ll.* 6–22, *in* Appellants' Appendix, Vol. 5, at 1643.

**9.** Appellants' Brief at 1.

**10.** I would find jurisdiction to review both the Abstention Order, for the reasons stated by the majority, and the Remand Order, under the substantive law exception recognized by the majority.

taken in the bankruptcy court while the complaint was pending in federal court.

The claims asserted in the adversary case and remanded by the bankruptcy court orders to the state court excluded only the derivative claims sold to TAR. Before remanding, the bankruptcy court did not rule on whether any claims not sold to TAR were affected by the sale. This resulted in remand of all claims, with the exception of the transferred claims, even though, as a matter of law, because of the nature of the interests sold and because the sale was pursuant to § 363(f), some of the nonderivative claims asserted by the Limited Partners may have been transferred to the proceeds of the sale or otherwise impacted by the sale.

In addition to posing the question of construction of the definition of "Assets" in the Sale Order to answer the question of what was sold, this appeal involves the closely related question of how to apply § 363(f) to the sale transaction. The Sale Order transferred the Assets, which were comprised of the Debtor's litigation claims, the EPA, and the PMDOT release, free and clear of all interests pursuant to § 363(f). Section 363(f) provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold

is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

The Code does not define "interest in property," and the "courts have been unable to formulate a precise definition."[11] Research has not revealed any Tenth Circuit authority that addresses the question. The Code makes it clear that a lien is an interest by providing in § 363(f)(3) conditions for a sale free and clear "if such interest is a lien." Similarly, rights of dower and curtesy are identified as interests by § 363(g). Although some courts have narrowly construed interest in property to mean *in rem* interests only, such as liens, the trend seems to be toward a more expansive reading of interest in property as encompassing other obligations that may flow from ownership of the property.[12] Some courts have held that the term "any interest" is intended to refer to obligations that are connected to, or arise from, the property being sold. Under this rationale, the Court of Appeals of the Fourth Circuit held that the sale of a coal mining company's assets under § 363(f) was free and clear of successor liability that would have otherwise arisen under the Coal Act,[13] and the Third Circuit held that the sale of an airline's assets was free and clear of any successor liability claim, stemming from either the airline's employees' pending employment discrimination claims or the settlement of a class action suit by flight

**11.** *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545 (7th Cir.2003).

**12.** 3 *Collier on Bankruptcy* ¶ 363.06[1], (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2006).

**13.** *United Mine Workers of Am.1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 573 (4th Cir. 1996).

attendants.[14] However, using this definition, the affirmative defense of recoupment to collection of an account purchased in a sale under § 363(f) was held not to be an interest in property and therefore not cut off by the sale.[15] The sale of an estate's interest in real property has been held to be free of a lessee's possessory interest.[16]

The issue of the possible impact of the free and clear sale is most apparent with respect to the sale of the Debtor's interest in the EPA and PMDOT release. The EPA is a contract between Debtor and Western Slope, whereby, in consideration for the transfer by Debtor to Western Slope of the Ballard House property, Western Slope will develop the property and Debtor will have the right to 80% of the net profits. Western Slope's performance is secured by the PMDOT, conveying in trust the Ballard House to Debtor. Debtor's interest in the EPA therefore includes a secured right to payment. Although none of the Limited Partners are parties to either the EPA or the PMDOT, in the State Court Litigation they alleged third party beneficiary status and a right to enforce the EPA based upon the definition of net profits as being total project revenues, less costs, and repayment of Debtor's original investors in an amount not to exceed $1.8 million, plus interest. They further contend, based upon the PMDOT, that this right to enforce the payment obligation of Western Slope is secured by the Ballard House property, thereby entitling them to pursue a foreclosure claim. The Sale Order authorized the transfer of the PMDOT release to TAR free and clear. TAR asserts that remand of the third party beneficiary and equitable lien claims was contrary to the sale of the EPA free and clear of interests, that after the sale the third party beneficiary rights of the Limited Partners, if any existed under state law, were extinguished and that only TAR has the right to enforce the EPA. Appellants assert that because of the sale of Assets, including the EPA and release of the PMDOT, the "limited partners' sole claim is as equity holders to the proceeds of the sale."[17] The Limited Partners contend that all the Debtor owned, and therefore all that the Trustee could sell, was a third tier right under the EPA, which was junior to the Limited Partners' second tier rights. They assert that their claims, including rights under the EPA and to an equitable lien, were not altered by the sale.

This dispute as to the claims remaining for remand involves interpretation of the Sale Order and consideration of the implications of the free and clear sale of the litigation claims, the EPA, and the release of the PMDOT. By not addressing whether, and if so, how, the sale, and § 363(f) in particular, affected the Limited Partners' third party beneficiary, equitable lien, and other claims, the bankruptcy court may have remanded claims which were extinguished by the sale. The bankruptcy court left to the state court the interpretation of the Code and construction of the bankruptcy court's own order approving the § 363 sale. This fact dependent, complex issue of bankruptcy law [18] should have

---

14. *In re Trans World Airlines, Inc.,* 322 F.3d 283 (3d Cir.2003).

15. *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV,* 209 F.3d 252, 261 (3d Cir.2000).

16. *Precision Indus.,* 327 F.3d at 545.

17. Reply Brief of Appellants at 15.

18. No case law or commentary addressing whether third party beneficiary rights under a contract of the Debtor constitute an "interest in property" has been identified by the parties or found by the Court. Likewise, research has not located any authorities on the ques-

been decided by the bankruptcy court. After such consideration, the bankruptcy court may again remand all claims except the derivative claims transferred to TAR or may find that some claims are barred. In either event, remand following such analysis of federal law would foreclose the parties' continued litigation over the implications of the § 363 sale in state court.

For the foregoing reasons, I would reverse the Abstention Order and the Remand Order and return this case to the bankruptcy court with directions to address before remand any claims not transferred to TAR and the impact of the § 363 sale on the claims asserted by the Limited Partners in the adversary case.

tion of whether the sale free and clear of a partnership's derivative claims affects the right of partners to assert the same claim.