NOT FOR PUBLICATION[1]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

December 30, 2022

Blaine F. Bates
Clerk

———————————————————

IN RE FRANK MCINTYRE,

    Debtor.

———————————————————

FRANK MCINTYRE,

    Plaintiff - Appellant,

v.

DENNIS FANGMAN, DAVID MCCONAUGHY, KEN OLSON, SOL ENERGY, LLC, and CHARLES WILLMAN,

    Defendants - Appellees.

BAP No. CO-22-003

Bankr. No. 19-15069
Adv. No. 19-01245
Chapter 13

OPINION

———————————————————

Appeal from the United States Bankruptcy Court
for the District of Colorado

———————————————————

Before **HALL**, **LOYD**, and **THURMAN**, Bankruptcy Judges.

———————————————————

**HALL**, Bankruptcy Judge.

———————————————————

[1] This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

Before this Court is Appellant Frank William McIntyre's ("McIntyre") attempt to take yet another bite of the apple after certain state court proceedings did not go his way. After a dispute arose between McIntyre and Appellees as to who should receive certain payments under a solar installation agreement, the party to the contract owing the money filed a state court interpleader action. McIntyre and Appellees filed counter and cross claims, and the state court found in favor of Appellees. Shortly after, McIntyre filed a chapter 13 petition and then an adversary proceeding based on the same causes of action he previously asserted in state court. McIntyre also filed a motion for leave to amend his complaint in the adversary proceeding. Ultimately, the Bankruptcy Court abstained from hearing the adversary proceeding and denied McIntyre leave to amend his complaint. McIntyre appealed, and we affirm.

## I.    Background

Glenwood Clean Energy, LTD ("GCE") entered into an installation agreement (the "Agreement") with property owner Dennis Fangman and engaged SoL Energy, LLC, ("SoL") as a subcontractor on the project.[2] Shortly before the project was completed, a contract dispute arose between GCE and McIntyre (together the "GCE Parties")[3] and SoL and its owner Ken Olson (together the "SoL Parties").[4] Although the Agreement required

---

[2] *Photovoltaic System Purchase and Installation Agreement*, *in* Appellant's App. at 375–76.

[3] Prior to the Bankruptcy Case, McIntyre as sole member dissolved GCE and assigned its rights, liabilities, and obligations to himself. *See Corporate Resolutions*, *in* Appellant's App. at 432–41.

[4] *See Exhibit C to First Amended Adversary Complaint and Objection to Claims of SoL Energy and Ken Olson*, *in* Appellant's App. at 389–94; *Exhibit D to First Amended*

Fangman to pay GCE, the SoL Parties submitted invoices to Fangman seeking payment in the amount of $39,480.78.[5]

In response, Fangman initiated an interpleader proceeding in state court (the "State Court Action") naming, among others, the SoL and GCE Parties as defendants and deposited the remaining amount owed under the Agreement in the state court registry.[6] The SoL and GCE Parties then asserted counter and cross claims against one another and Fangman related to the Agreement.[7] On March 13, 2019, the state court entered an order of default judgment against GCE[8]—who failed to appear—and entered a separate order

---

*Adversary Complaint and Objection to Claims of SoL Energy and Ken Olson*, *in* Appellant's App. at 396–400; *Exhibit E to First Amended Adversary Complaint and Objection to Claims of SoL Energy and Ken Olson*, *in* Appellant's App. at 401–23; *Exhibit E to First Amended Adversary Complaint and Objection to Claims of SoL Energy and Ken Olson*, *in* Appellant's App. at 425.

[5] *Exhibit D to First Amended Adversary Complaint and Objection to Claims of SoL Energy and Ken Olson* at 1, *in* Appellant's App. at 396.

[6] *Complaint in Interpleader Pursuant to C.R.C.P. Rule 22*, *in* Appellant's App. at 443–46.

[7] *Findings of Fact and Conclusions of Law and Order* at 3–4, *in* Appellant's App. at 988–89. McIntyre asserted the following as his causes of action in the State Court Action: (1) Dennis Fangman's Breach of Contract and Bad Faith; (2) Dennis Fangman's Intentional Infliction of Emotion Distress; (3) Dennis Fangman's Negligent Infliction of Emotional Distress; (4) SoL Energy's and Ken Olson's Bad Faith and Breach of Contract; (5) SoL Energy and Ken Olson's Interference with a Contract; (6) SoL Energy and Ken Olson's Fraud; (7) SoL Energy and Ken Olson's Intentional Infliction of Emotional Distress; (8) SoL Energy and Ken Olson's Negligent Infliction of Emotional Distress; (9) SoL Energy and Ken Olson's Negligence and Gross Negligence; (10) SoL Energy and Ken Olson's Breach of Fiduciary Duty. *Defendant – Counter-Cross Plaintiff Frank McIntyre's Second Amended Counter and Cross Claim* at ¶¶ 66–74, *in* Appellant's App. at 207–13.

[8] *Order Granting Motion for Default Judgment Against Glenwood Clean Energy, Ltd.*, *in* Appellant's App. at 165–66.

3

(the "State Court Judgment") granting SoL's motion for judgment on the pleadings in the amount of $39,480.78.[9] The state court did not release the amounts owed to the SoL Parties from the court registry (the "Funds") at that time because other claims remained pending.[10]

On June 12, 2019, McIntyre filed a voluntary petition for relief under chapter 13 (the "Bankruptcy Case").[11] A few months later, McIntyre filed an adversary proceeding (the "Adversary Proceeding") against Dennis Fangman, the SoL Parties, Charles Willman, and David McConaughy asserting (i) essentially the same claims McIntyre asserted in state court (the "State Law Claims"), and (ii) objections to the SoL Parties' proofs of claim filed in his Bankruptcy Case (the "Claim Objections").[12] Later, McIntyre

---

[9] *Order Regarding SoL Energy's Motion for Judgment of the Pleadings*, *in* Appellant's App. at 167–70.

[10] *Id.* at 3, *in* Appellant's App. at 169.

[11] *See Plaintiff's Second Motion for Leave to File First Amended Adversary Complaint* at ¶ 1, *in* Appellant's App. at 327. *See also* McIntyre's *Voluntary Petition for Individuals Filing for Bankruptcy* (Bankr. Dkt. No. 1)

[12] *Adversary Complaint and Objection to Claims of SoL Energy and Ken Olson*, *in* Appellant's App. at 22–59. McIntyre asserted the following as his causes of action: (1) SoL Energy's Breach of Contract and Breach of Duty of Good Faith and Fair Dealing; (2) Ken Olson Aided and Abetted SoL Energy's Breach of Contract and Breach of Duty of Good Faith and Fair Dealing; (3) Olson and SoL Energy's Interference with a Contract; (4) Ken Olson Aided and Abetted SoL Energy's Interference with the Installation Agreement and Directly Interfered with the Revenue Sharing Agreement between GCE and SoL Energy; (5) SoL Energy's Breach of Fiduciary Duty; (6) Ken Olson Aided and Abetted SoL Energy's Breach of Fiduciary Duty; (7) Ken Olson's and SoL Energy's Negligence and Gross Negligence; (8) SoL Energy and Ken Olson's Fraud; (9) Ken Olson's and SoL Energy's Intentional Infliction of Emotional Distress; (10) Ken Olson's, SoL Energy's and David McConaughy's Fraud on McIntyre and the Court; (11) Dennis Fangman's Breach of Contract and Breach of Duty of Good Faith and Fair Dealing; (12) Fangman's and Willman's Negligence and Gross Negligence; (13) Dennis Fangman's and Charles Willman – Intentional Infliction of Emotion Distress;

4

filed leave to amend the adversary complaint (the "Complaint") to add a claim under 42 U.S.C. § 1983,[13] and Appellees filed motions to dismiss the Adversary Proceeding.[14]

The Bankruptcy Court entered an order (the "January 23, 2020 Order") dismissing the State Law Claims.[15] The Bankruptcy Court concluded it lacked jurisdiction under 28 U.S.C. § 1334 because the State Law Claims did not arise under the Bankruptcy Code, nor did they arise in the Bankruptcy Case. And, even if the State Law Claims were "related to" the Bankruptcy Case, discretionary abstention under 28 U.S.C. § 1334(c) was appropriate because the claims had been adjudicated, or remained pending, before the state court and, therefore, would have little effect on the efficient administration of the bankruptcy estate.[16] The Bankruptcy Court also denied McIntyre's motion for leave to amend the Complaint and held the Claim Objections in abeyance pending resolution of the remaining claims in the State Court Action.[17]

---

(14) Dennis Fangman's and Charles Willman's Fraud on McIntyre and the Court; (15) Estopple [*sic*] Claim Against Olson and SoL Energy; and an Objection to Claims of Olson and SoL Energy. *Adversary Complaint and Objection to Claims of SoL Energy and Ken Olson* at ¶¶ 76–91, *in* Appellant's App. at 32–58.

[13] *Plaintiff's Second Motion for Leave to File First Amended Adversary Complaint*, *in* Appellant's App. at 327–30.

[14] *Motion to Dismiss Adversary Proceeding Complaint*, *in* Appellant's App. at 132–50.

[15] January 23, 2020 Order at 11, *in* Appellant's App. at 923.

[16] *Id.* at 8–9, *in* Appellant's App. at 920–21.

[17] *Id.* at 11, *in* Appellant's App. at 923.

McIntyre filed a motion seeking reconsideration of the January 23, 2020 Order,[18] and the SoL Parties filed a motion to clarify[19] asking the Bankruptcy Court for relief from the automatic stay to continue the State Court Action. On April 16, 2020, the Bankruptcy Court entered an order (the "April 16, 2020 Order") denying McIntyre's motion to reconsider and explicitly stating the SoL Parties were granted relief from the automatic stay to proceed in state court on the remaining claims in the State Court Action.[20] In January 2021, the state court adjudicated the remaining claims and disbursed the Funds to the SoL Parties.[21] McIntyre notified the state court that the Funds should not have been released and argued the April 16, 2020 Order precluded the SoL Parties from collecting judgments with respect to prepetition claims.[22] The state court then required the SoL Parties to return the Funds.[23]

Subsequently, the SoL Parties filed a motion with the Bankruptcy Court requesting any relief from the automatic stay necessary to allow them to recover the Funds.[24] On March 11, 2021, the Bankruptcy Court entered an order (the "Enforcement Order")

---

[18] *Plaintiff's Motion for Reconsideration of Order Entered 1/23/2020, in* Appellant's App. at 934–41.

[19] *Motion for Clarification of Court Order Regarding Relief from Automatic Stay, in* Appellant's App. at 924–26.

[20] April 16, 2020 Order at 9–10, *in* Appellant's App. at 970–71.

[21] *Findings of Fact, Conclusions of Law and Order* at 16, *in* Appellant's App. at 1001.

[22] *Order to Return Funds to the Court Registry, in* Appellant's App. at 1009–10.

[23] *Id.*

[24] *Motion to Approve Enforcement of State Court Judgment, in* Appellant's App. at 1003–07.

concluding the bankruptcy estate did not have an interest in the Funds, so the automatic stay did not prevent disbursement.[25] McIntyre filed a motion to set aside the Enforcement Order,[26] which the Bankruptcy Court denied.[27]

Finally, on January 31, 2022, the Bankruptcy Court entered an order (the "Final Order"), *sua sponte*, dismissing the Claim Objections without prejudice to McIntyre later reasserting the objections if he was ultimately successful in state court and dismissing the Adversary Proceeding.[28] McIntyre appealed.[29]

## II.     Jurisdiction

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit unless a party elects to have the district court hear the appeal.[30] McIntyre filed a timely notice of appeal after the Bankruptcy Court entered the Final Order.[31] No party elected to have the district court hear the appeal. This Court, therefore, has jurisdiction over this appeal.

---

[25] Enforcement Order at 3, *in* Appellant's App. at 1024.

[26] *Plaintiff/Debtor's Emergency Motion to Set Aside Order Approving Enforcment [sic] of State Court Judgment*, *in* Appellant's App. at 1025–76.

[27] *Order*, *in* Appellant's App. at 1661–2

[28] Final Order, *in* Appellant's App. at 1693–94.

[29] *Notice of Appeal and Statement of Election*, *in* Appellant's App. at 1695–96.

[30] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8003, 8005.

[31] *See In re Durability, Inc.*, 893 F.2d 264, 266 (10th Cir. 1990) (noting that "the appropriate 'judicial unit' for application of these finality requirements in bankruptcy is not the overall case, but rather the particular adversary proceeding, or discrete controversy pursued within the broader framework cast by the petition").

### III.     Issues on Appeal and Standards of Review

We address four issues on appeal. The first issue is whether the Bankruptcy Court erred in concluding the Funds were not property of the bankruptcy estate and, thus, not subject to the automatic stay, which we review de novo.

The second and third issues stem from McIntyre's challenges to the Bankruptcy Court's dismissal of the State Law Claims and Claim Objections. We first analyze whether the Bankruptcy Court erred by concluding it lacked subject matter jurisdiction over the State Law Claims, which we review de novo.[32] We then consider whether the Bankruptcy Court erred by abstaining from adjudicating the State Law Claims and Claim Objections, which we review for an abuse of discretion.[33]

Fourth, we address whether the Bankruptcy Court erred in denying McIntyre leave to amend the Complaint by determining such an amendment would be futile. We review denial of a motion to amend a pleading for abuse of discretion[34] and the underlying legal determination of futility de novo.[35]

---

[32] *Mut. of Omaha Ins. Co. v. U.S. Dep't of Health & Human Servs. (In re Precedent Health Ctr. Operations, LLC)*, 392 F. App'x 618, 621 (10th Cir. 2010) (reviewing a dismissal for lack of subject matter jurisdiction de novo) (citing *Butler v. Kempthorne*, 532 F.3d 1108, 1109 (10th Cir. 2008)).

[33] *Hall v. N. Am. Mortg. Co. (In re Hall)*, 497 B.R. 167, 2013 WL 3786783 at *2 (10th Cir. BAP July 22, 2013) (unpublished) (reviewing permissive abstention for abuse of discretion).

[34] *Collins v. Daniels*, 916 F.3d 1302, 1323 (10th Cir. 2019) ("We ordinarily review a denial of a motion to amend a pleading for abuse of discretion.") (quoting *Miller ex rel. S.M. v. Bd. of Educ.*, 565 F.3d 1232, 1239 (10th Cir. 2009))

[35] *See id.* (reviewing the legal basis for the futility finding de novo).

8

On de novo review, we give no deference to a bankruptcy court's decision and apply the same standard as the bankruptcy court.[36] Whereas, under the abuse of discretion standard, we will not disturb the bankruptcy court's decision unless the bankruptcy court "made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."[37]

## IV.  Analysis

### A.  The Bankruptcy Court did not err in concluding the Funds were not property of the estate, and thus not subject to the automatic stay.

Section 541(a) provides that property of the estate consists of all legal and equitable interests a debtor had at the time the debtor filed the bankruptcy petition.[38] Section 362(a)(3) operates as a stay of any act to obtain possession of or exercise control over property of the estate.[39]

Construing McIntyre's argument liberally, he takes issue with the Bankruptcy Court's decision to allow the state court to disburse the Funds to the SoL Parties. He contends the Funds—that existed by virtue of his account receivable—were property of the estate and, thus, the Bankruptcy Court erred by "further lifting" the automatic stay and concluding the Funds did not belong to the bankruptcy estate.

---

[36] *Carlile v. Reliance Standard Life Ins. Co.*, 988 F.3d 1217, 1221 (10th Cir. 2021).

[37] *In re Westby*, 486 B.R. 509, 515 (10th Cir. BAP 2013).

[38] 11 U.S.C. § 541(a).

[39] *Id.* § 362(a)(3).

Appellees contend the Bankruptcy Court did not "further lift" the automatic stay when it entered the Enforcement Order. Rather, the Bankruptcy Court properly concluded the bankruptcy estate did not have an interest in the Funds so the automatic stay did not prevent disbursement.

Neither the Tenth Circuit nor this Court has ruled on whether interpleaded funds claimed by a debtor are property of the bankruptcy estate. Accordingly, we turn to courts in other circuits for guidance in analyzing the interplay between interpleader actions and bankruptcy law.

Several courts have analyzed whether an interpleader action *filed after* a bankruptcy violates the automatic stay under § 362 when the debtor (or bankruptcy estate) is a claimant to the interpleaded property. In doing so, these courts concluded the automatic stay does not prevent a non-bankruptcy court from overseeing an interpleader action to determine what might become property of the estate because such proceeding is not a proceeding to obtain property of the estate.[40] This reasoning strongly suggests

---

[40] *See Nat'l Co-op. Refinery Assoc. v. Rouse*, 60 B.R. 857, 860 (D. Colo. 1986) (concluding when an interpleader is to determine title to the property, the property is not property of the "debtor" within the meaning of 11 U.S.C. § 362(a)); *Rett White Motor Sales Co. v. Wells Fargo Bank*, 99 B.R. 12, 14 (N.D. Cal. 1989) (concluding the stay did not affect an interpleader determining title to the property at issue); *Shell Pipe Line Corp. v. West Tex. Mktg. Corp.*, 540 F. Supp. 1155, 1161 (S.D. Tex. 1982) (concluding the interpleader action initiated in a different court during the bankruptcy did not violate § 362 in part because it was not an action to obtain property of the estate).

interpleaded funds claimed by a debtor before a bankruptcy filing, as is the case with McIntyre, are also not property of the estate.[41]

A synthesis of the authority leads this Court to conclude the Funds are not property of the estate and disbursement of the Funds did not violate the automatic stay under § 362(a)(3). Here, the State Court Action was not a proceeding seeking to obtain property of the estate. Instead, the State Court Action sought to determine title to the Funds, with McIntyre being only one of the claimants to the Funds.[42] In simple terms,

---

[41] Additionally, other courts have also concluded that certain funds held in a construction trust, even if contained in an interpleader, are not property of the estate. For example, in *United Parcel Services., Inc. v. Weben Industries., Inc.*, the Fifth Circuit analyzed whether an interpleaded fund was an "account receivable" of the debtor (and thus property of the estate) and concluded the interpleaded fund never became property of the estate because the monies were held in a "construction trust fund," and thus never belonged to the debtor. 794 F.2d 1005, 1007, 1009 (5th Cir. 1986) (citing *Cutler-Hammer, Inc. v. Wayne*, 101 F.2d 823, 825 (5th Cir. 1939)). Similarly, in *Bethlehem Steel Corp. v. Tidwell*, the district court concluded that because funds held in a construction trust are not property of the estate, payments to subcontractors were not preferences. 66 B.R. 932, 933 (M.D. Ga. 1986). These cases support the Funds not being property of the estate as any monies McIntyre might have received would likely include monies held in a "construction trust" for the benefit of the SoL Parties as subcontractors under Colorado law, and such monies never would have belonged to McIntyre. *See* Colo. Rev. Stat. Ann. § 38-22-127 (The Colorado construction trust fund statute states that "all funds disbursed to a contractor or subcontractor under any contract or project . . . shall be held in trust for the payment of the subcontractor" or persons who may have a right to a lien against the property).

[42] The Colorado Court of Appeals recently affirmed the trial court's determination the Funds belonged to SoL. *See Notice of Colorado Court of Appeals Ruling* (BAP ECF No. 46). On December 21, 2022, Appellant filed a motion to strike with this Court (BAP ECF No. 47), arguing the Colorado Court of Appeals ruling is not properly part of the record on appeal and should be stricken. "Judicial notice may be taken at any time, including on appeal." *U.S. v. Burch*, 169 F.3d 666, 671 (10th Cir. 1999). Both the Tenth Circuit and this Court have held that federal courts can take judicial notice of any matters that are verifiable with certainty, including other courts' records. *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1226 (10th Cir. 2008); *In re Brumfiel*, CO–15–014,

ownership of the Funds remained in dispute at the time the Bankruptcy Case was filed.

Accordingly, the Bankruptcy Court did not err in concluding the Funds were not property

of the bankruptcy estate, and therefore not subject to the automatic stay.

B. *The Bankruptcy Court did not err in dismissing the State Law Claims and Claim Objections.*

Understanding the jurisdiction of the bankruptcy courts can be an elusive study but

is not insurmountable if taken step by step. First, pursuant to 28 U.S.C. § 1334, the

federal district courts have original and exclusive jurisdiction over cases under Title 11 of

the United States Code (*i.e.* bankruptcy cases) and over all property of a bankruptcy

estate.[43] Such courts also have original but not exclusive jurisdiction over "civil

proceedings arising under [T]itle 11, or arising in or related to cases under [T]itle 11."[44]

By virtue of 28 U.S.C. § 157(a), the federal district courts are authorized, but not

required, to refer to the bankruptcy courts cases under Title 11, and proceedings arising

under Title 11, or arising in or related to cases under Title 11.[45] The United States District

---

2015 WL 5895213, at *8 n.59 (10th Cir. BAP Oct. 8, 2015) (unpublished) (taking judicial notice of various state court and other federal court orders filed after entry of the order appealed). *See also In re Telluride Income Growth LP*, 364 B.R. 407, 414 (10th Cir. BAP 2007) (taking judicial notice of bankruptcy court records filed after the appeal) and *Rafter Seven Ranches L.P. v. WNL Invs., L.L.C. (In re Rafter Seven Ranches L.P.)*, 414 B.R. 722, 740 (10th Cir. BAP 2009) (same). Accordingly, we DENY the motion to strike.

[43] 28 U.S.C. § 1334(a), (e)(1).

[44] *Id.* § 1334(b).

[45] *Id.* § 157(a).

Court for the District of Colorado has made the reference to the Colorado bankruptcy court pursuant to local rule and General Procedure Order No. 1984–3.[46]

Second, pursuant to 28 U.S.C. § 157(b)(1), bankruptcy courts may hear and determine all cases under the Bankruptcy Code or arising in a case under the Bankruptcy Code, otherwise known as "core" proceedings.[47] "Core proceedings are proceedings that involve rights created by bankruptcy law or which only arise in a bankruptcy proceeding."[48] Simply put, core proceedings do not exist outside of bankruptcy, and the bankruptcy court's jurisdiction over them (with limited exceptions)[49] is undebatable.[50] A non-exclusive list of "core proceedings" is set forth in § 157(b)(2) and includes "matters concerning the administration of the estate," "allowance or disallowance of claims

---

[46] Pursuant to General Procedure Order No. 1984–3, the United States District Court for the District of Colorado has made the reference to the Bankruptcy Court for the District of Colorado of all cases under Title 11 and any and all proceedings arising under Title 11, the Bankruptcy Code. *See also* D.C. Colo. L. Civ. R. 84.1(a) ("Automatic Referral. A case or proceeding brought under or related to Title 11 . . . shall be referred automatically to the bankruptcy judges of this district under 28 U.S.C. § 157.").

[47] *In re Houlik*, 481 B.R. 661, 673 (10th Cir. BAP 2012) (citing 28 U.S.C. § 157(b)(1)).

[48] *In re Telluride Income Growth, L.P.),* 364 B.R. 390, 397 (10th Cir. BAP 2007) (citing *Gardner v. United States (In re Gardner),* 913 F.2d 1515, 1518 (10th Cir.1990)).

[49] Bankruptcy courts are constitutionally barred from deciding certain "core" claims without the parties' consent. 28 U.S.C. § 157(b)(2)(I); *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34-35 (2014) (discussing *Stern v. Marshall*, 564 U.S. 462 (2011)). The Supreme Court held in *Stern* "that section 157(b)(2)(C), which authorizes the bankruptcy judges to issue final determinations of counterclaims by the estate against persons filing claims against the estate, has unconstitutionally assigned, for at least some proceedings, the 'judicial Power of the United States' to the non-Article III bankruptcy judges." 1 COLLIER ON BANKRUPTCY ¶ 3.02 (16th ed. 2022) (discussing *Stern*). The present case involves no such counterclaims, and therefore, *Stern* is inapplicable.

[50] *In re Houlik*, 481 B.R. at 673.

13

against the estate," and "counterclaims by the estate against persons filing claims against the estate."[51]

Third, non-core matters are "those that are 'not . . . core' but are 'otherwise related to a case under [T]itle 11.'"[52] Non-core matters do not depend on the Bankruptcy Code for their existence and can proceed in another court outside of bankruptcy.[53] A bankruptcy court has jurisdiction over non-core proceedings when they are related to the bankruptcy case because they could conceivably have an effect on the bankruptcy estate.[54] There is, however, no statutory definition for determining if a matter falls within a bankruptcy court's "related to" subject matter jurisdiction.[55] Related proceedings "include (1) causes of action owned by the debtor which become property of the estate

---

[51] 28 U.S.C. § 157(b)(2). A proceeding "arises under" Title 11 "if it asserts a cause of action created by the Code." *In re Midgard Corp.*, 204 B.R. 764, 771 (10th Cir. BAP 1997). A proceeding "arises in" when the matter could not exist outside the bankruptcy case but is not a cause of action under the Code. *Id.*

[52] *Exec. Benefits*, 573 U.S. at 34 (citing 28 U.S.C. § 157(c)(1)).

[53] *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1517-18 (10th Cir. 1990) (first citing *United States v. Farmers State Bank of Leed (In re Alexander)*, 49 B.R. 733, 736 (Bankr. D. N.D. 1985); then citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987)).

[54] *In re Gardner*, 913 F.2d at 1518; *In re Telluride Income Growth, L.P.*, 364 B.R. 390, 397–98 (10th Cir. BAP 2007) (citing *Gregory Ranch v. Lyman (In re Gregory Rock House Ranch, LLC)*, 339 B.R. 249, 253 (Bankr. D. N.M. 2006)).

[55] *Benedictine Coll., Inc. v. Century Off. Prods., Inc.*, 866 F. Supp. 1323, 1326 (D. Kan. 1994); *Pro. Home Health Care, Inc. v. Complete Home Health Care, Inc. (In re Pro. Home Health Care, Inc.)*, No. 01-1116-ABC, 2002 WL 1465914, at *2 (Bankr. D. Colo. July 2, 2002) (unpublished).

14

pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate."[56]

The outer limits of a bankruptcy court's subject matter jurisdiction are those non-core matters "related to" a case under Title 11.

> Put simply: If a matter is core, the statute empowers the bankruptcy judge to enter final judgment on the claim, subject to appellate review by the district court. If a matter is non-core, and the parties have not consented to final adjudication by the bankruptcy court, the bankruptcy judge must propose findings of fact and conclusions of law. Then, the district court must review the proceeding de novo and enter final judgment.[57]

i.     Although the Bankruptcy Court erred in concluding there was no subject matter jurisdiction over the State Law Claims, that error was harmless.

**1.     Section 1334(b)**

McIntyre argues the Bankruptcy Court erred in concluding it lacked subject matter jurisdiction over the State Law Claims. Specifically, McIntyre claims the State Law Claims either arise under the Bankruptcy Code or arise in or are related to the Bankruptcy Case under § 1334(b). The Bankruptcy Court concluded the State Law Claims did not arise under the Bankruptcy Code and did not arise in, and are not related to, the Bankruptcy Case. Consequently, the Bankruptcy Court also concluded it did not have subject matter jurisdiction over the State Law Claims. Although we agree with the

---

[56] *In re Midgard Corp.*, 204 B.R. at 771 (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995)); *In re Eneco, Inc.*, 431 B.R. 308, 2010 WL 744351, at *9 (10th Cir. BAP Mar. 2, 2010) (unpublished).

[57] *Exec. Benefits*, 573 U.S. at 34. *See also* 28 U.S.C. § 157(c).

Bankruptcy Court the State Law Claims neither arise under the Bankruptcy Code nor arise in the Bankruptcy Case, we find the Bankruptcy Court erred in concluding the State Law Claims were not related to the Bankruptcy Case. However, we further conclude the Bankruptcy Court's determination the State Law Claims were not related to the Bankruptcy Case to be harmless error given its discretionary decision to permissively abstain from hearing the State Law Claims.

The State Law Claims, by definition, do not arise under Title 11. A claim arises under Title 11 if it asserts a cause of action created by the Bankruptcy Code, such as exemption claims under 11 U.S.C. § 522 and avoidance claims under chapter 5 of the Bankruptcy Code.[58] Because the State Law Claims were first raised by McIntyre against the SoL Parties in the State Court Action, which was filed prior to the commencement of the Bankruptcy Case, and are based entirely on Colorado law and not the Bankruptcy Code, the State Law Claims also, by definition, did not arise in the Bankruptcy Case under Title 11.[59]

However, the State Law Claims were related to the Bankruptcy Case within the meaning of § 1334(b). "Related to" proceedings are those that could be commenced independently of a bankruptcy case but the "outcome of that proceeding could

---

[58] *In re Migard Corp.*, 204 B.R. at 771.

[59] *Id.* at 771 ("Proceedings 'arising in' in a bankruptcy case are those that could not exist outside of a bankruptcy case, but that are not causes of action created by the Bankruptcy Code.") (citing *In re A.H. Robins Co.*, 86 F.3d 364, 371 (4th Cir. 1996)).

conceivably have an effect on the estate being administered in bankruptcy."[60] A proceeding affects a bankruptcy estate "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting [ ] the handling and administration of the bankruptcy estate."[61]

The State Law Claims were related to the Bankruptcy Case sufficiently to confer jurisdiction under § 1334(b) because the state court had not ruled on all claims in the State Court Action at the time of the bankruptcy filing. If McIntyre had prevailed on the State Law Claims on reconsideration or on appeal thereof, McIntyre's bankruptcy estate could be impacted because it "could alter the debtor's rights, liabilities, options, or freedom of action" and give rise to an asset not otherwise available for distribution. On the flip side, any defeat of the State Law Claims could give rise to additional claims by the SoL Parties against McIntyre thereby impacting the administration of the bankruptcy estate.[62] Thus, the Bankruptcy Court had subject matter jurisdiction over the State Law Claims as they are related to the Bankruptcy Case. Nevertheless, given our conclusion below—that the Bankruptcy Court did not err in exercising permissive abstention—we conclude this error to be harmless.

---

[60] *Id.* (quoting *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir. 1990)).

[61] *In re Gardner*, 913 F.2d at 1518.

[62] *Id.*

## 2.    Section 1334(e)(1)

McIntyre also argues the Bankruptcy Court had subject matter jurisdiction over the State Law Claims because they stem from his interest in the Funds. McIntyre asserts the Funds were property of the bankruptcy estate because they related to his account receivable and remained in the possession of the state court registry. According to McIntyre, this fact alone invokes exclusive jurisdiction under § 1334(e)(1).

Section 1334(e)(1) provides bankruptcy courts, by reference, have exclusive jurisdiction "of all the property, wherever located, of the debtor" as of the petition date and "of property of the estate."[63] By virtue of § 1334, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate."[64] Consequently, bankruptcy courts have exclusive jurisdiction over property of the bankruptcy estate[65] and the determination of what constitutes property of the bankruptcy estate.[66]

Although the Bankruptcy Court has exclusive jurisdiction over property of the estate, wherever located,[67] the Bankruptcy Court, nevertheless, is not required to hear all

---

[63] 28 U.S.C. § 1334(e)(1).

[64] *In re Hafen*, 616 B.R. 570, 578 (10th Cir. BAP 2020) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (explaining 28 U.S.C. § 1334(b)'s "related to" jurisdiction is intentionally broad)).

[65] *Id.* (citing *In re Gardner*, 913 F.2d at 1518).

[66] *Id.*

[67] 28 U.S.C. § 1334(e)(1).

proceedings that may affect property of the bankruptcy estate.[68] McIntyre relies on *In re Seay*, *In re Gardner*, *In re Bucyrus Grain Co.*, and *In re Hafen* to argue the Bankruptcy Court had exclusive jurisdiction over the State Law Claims as they relate to the Funds.[69] We disagree.

First, as we concluded above, the Funds were not property of McIntyre's bankruptcy estate at the time of the bankruptcy filing. Second, McIntyre's reliance on his cited cases is misplaced. In *Seay*, the issue before the bankruptcy court did not concern a dispute over what is property of a bankruptcy estate.[70] Similarly, *Gardner* and *Bucyrus* did not analyze the issue of whether a claim to collect an account receivable constitutes a dispute over whether such claim is property of the estate.[71] Additionally, although *Hafen*

---

[68] *See In re Phoenix Env't, LLC*, Adv. Pro. 11-1199, 2012 WL 279446, at *2 (Bankr. D. N.M. Jan. 31, 2012) (unpublished) ("Unquestionably the Court has exclusive jurisdiction over property of the estate, wherever located. § 1334(e)(1). But that fact alone does not mean that the Court must itself conduct all the proceedings that might bear on the disposition of property of the estate.") (citing *Oakwood Acceptance Corp. v. Tsinigini (In re Oakwood Acceptance Corp.)*, 308 B.R. 81, 86–88 (Bankr. D. N.M. 2004) (concluding a bankruptcy court may remand a core proceeding to its original forum when the forum's laws predominate over the bankruptcy law issues); *see also In re Med Gen., Inc.*, 672 F.2d 716, 719 (8th Cir. 1982) (concluding the court's exclusive jurisdiction over property of the estate does not prohibit the court "to remit ancillary matters, like the collection of debts, to other forums").

[69] *In re Seay*, 97 B.R. 41 (Bankr. D. Colo. 1989); *In re Gardner*, 913 F.2d 1515 (10th Cir. 1990); *In re Bucyrus Grain Co.*, 56 B.R. 204 (Bankr. D. Kan. 1986); and *In re Hafen*, 616 B.R. 570 (10th Cir. BAP 2020).

[70] *In re Seay*, 97 B.R. at 45 (determining the statutory state court proceeding terminated the debtor's right in the garnisheed funds, and concluding the garnisheed funds were never property of the estate).

[71] *In re Bucyrus Grain Co.*, 56 B.R. at 206 (concluding an action to collect an account receivable is a core proceeding); *In re Gardner*, 913 F.2d at 1518–19

19

concluded the bankruptcy court is the only court with subject matter jurisdiction to determine whether a claim is property of the estate,[72] the Adversary Proceeding at issue here is not such a proceeding.

In *Hafen*, whether the bankruptcy court was the proper forum to adjudicate the claims was not at issue; rather, the issue was whether claims belonged to the debtor's investors or the bankruptcy estate. In fact, *Hafen* stands for the conclusion that bankruptcy courts are the only courts with subject matter jurisdiction to determine whether a claim is property of the estate, but not the only courts with subject matter jurisdiction to liquidate a claim owned by a bankruptcy estate.[73]

In this appeal, whether McIntyre is the proper party to pursue the State Law Claims is not at issue. It is clear McIntyre had standing to bring the State Law Claims, which are property of his bankruptcy estate. The issue is whether § 1334(e)(1) mandates the Bankruptcy Court serve as the forum to adjudicate the State Law Claims. Just because the Bankruptcy Court had, and has, exclusive jurisdiction of property of McIntyre's

---

(concluding the bankruptcy court's jurisdiction over disputes concerning certain property lapsed after determining the debtor had no interest in that property).

[72] *In re Hafen*, 616 B.R. at 579. In *Hafen*, investors of the debtor filed state court fraudulent transfer claims many years after the debtor received his discharge. *Id.* at 573. The debtor moved for discharge violation sanctions alleging the investors lacked standing because the claims were property of the bankruptcy estate and therefore, belonged to the bankruptcy trustee. *Id.* Without considering the standing issue, the bankruptcy court denied the sanctions stating the state court could determine the standing issue. *Id.* On appeal, the appellate court held the bankruptcy court did not have discretion to defer ruling on the standing issue to the state court because the bankruptcy court is the exclusive forum to determine whether the claims were property of the estate. *Id.* at 579.

[73] *Id.*

bankruptcy estate under § 1334(e)(1) does not mean it had, and has, exclusive jurisdiction of civil proceedings concerning property of the bankruptcy estate. While § 1334(e)(1) establishes *in rem* jurisdiction of bankruptcy courts over property of the bankruptcy estate, it does not "negate the provisions of 28 U.S.C. § 1334(b) that grant the bankruptcy courts original *but not exclusive jurisdiction of civil proceedings* 'arising under title 11, or arising in or related to cases under title 11.'"[74]

Here, the Adversary Proceeding sought to relitigate the State Law Claims, *i.e.* essentially the same prepetition claims McIntyre asserted and lost in the State Court Action. Nothing precluded the Bankruptcy Court from deferring to the state court to finally resolve the State Law Claims, which are entirely reliant on Colorado state law for their existence and their resolution.[75] Because neither McIntyre nor any other interested party seeks a determination on whether the claims are property of the bankruptcy estate, and no party raised such claims are not property of McIntyre's bankruptcy estate, we conclude § 1334(e)(1) does not mandate the Bankruptcy Court hear the State Law Claims to the exclusion of the state court.

---

[74] *Fieldturf USA, Inc. v. Astroturf, LLC (In re Astroturf, LLC)*, No. 16-41504-PWB, 2017 WL 1194649, at *10 (Bankr. N.D. Ga. Mar. 30, 2017) (unpublished) (citing *Noletto v. Nationsbanc Mortg. Corp. (In re Noletto)*, 244 B.R. 845 (Bankr. S. D. Ala. 2000)) (emphasis added).

[75] *Cf. In re Dynamic Drywall, Inc.*, No. 14-11131, 2015 WL 4497967 (Bankr. D. Kan. July 21, 2015) (unpublished), *report and recommendation adopted sub nom. Dynamic Drywall, Inc. v. McPherson Contractors, Inc.*, No. 6:15-CV-1229-JTM, 2015 WL 4744501 (D. Kan. Aug. 11, 2015) (unpublished).

ii.    The Bankruptcy Court did not abuse its discretion by abstaining from adjudicating the State Law Claims and Claim Objections.

**1.    The State Law Claims**

Even if a bankruptcy court concludes subject matter jurisdiction exists over state law claims, the bankruptcy court may abstain from hearing a proceeding over such claims in certain circumstances.[76] Section 1334(c)(1) authorizes discretionary abstention, providing "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."[77] Courts apply the following factors in analyzing whether to use their discretion to abstain from hearing and determining a matter:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presences of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presences in the proceeding of nondebtor parties.[78]

---

[76] 28 U.S.C. § 1334(c)

[77] *Id.* § 1334(c)(1).

[78] *In re Ellicott Springs Res., LLC*, 485 B.R. 626, 640 (Bankr. D. Colo. 2013) (quoting *In re Schempp Real Estate, LLC*, 303 B.R. 866, 876 (Bankr. D. Colo. 2003)).

22

McIntyre argues the Bankruptcy Court erred in abstaining from hearing the State Law Claims because his claims were disputes over property of the estate and, thus, "core proceedings" conferring exclusive jurisdiction in the Bankruptcy Court over such claims. Appellees contend the Bankruptcy Court does not have "exclusive jurisdiction" and, while § 1334(b) confers original jurisdiction over all proceedings that arise under, arise in, or are related to a bankruptcy case, § 1334(c) authorizes a bankruptcy court to permissively abstain from both core and non-core matters.[79]

The Bankruptcy Court concluded, even if it had subject matter jurisdiction of the State Law Claims, permissive abstention was warranted. The Bankruptcy Court reasoned there would be little effect on the efficient administration of McIntyre's bankruptcy estate if it abstained. Additionally, if McIntyre recovered in the State Court Action, he could then seek turnover of the proceeds in the Bankruptcy Case. The Bankruptcy Court also determined the state law issues—based on well-settled Colorado law—predominated over the bankruptcy issues, with the State Law Claims predating McIntyre's bankruptcy filing.[80]

---

*See also In re George Love Farming, LLC*, 438 B.R. 354, 2010 WL 813689, at *6 (10th Cir. BAP Mar. 9, 2010) (unpublished) (citing *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993), *aff'd sub nom. In re George Love Farming, LC*, 420 F. App'x 788 (10th Cir. 2011).

[79] *In re Telluride Income Growth, L.P.*, 364 B.R. 390, 98 (10th Cir. BAP 2007) ("Section 1334(c)(1) permits abstention from core matters and non-core matters when it is in the 'interest of justice,' judicial economy, or respect for state law ('permissive abstention').").

[80] Final Order at 2, *in* Appellant's App. at 1694.

We conclude the Bankruptcy Court did not abuse its discretion in abstaining from hearing the State Law Claims. Section 1334(c) provides for discretionary abstention of both core and non-core proceedings. Thus, the Bankruptcy Court has discretion to abstain from hearing any proceeding arising under § 1334(b) jurisdiction out of comity for state courts and/or respect for state law. With the progression of the State Court Action, the pending appeal in state court at the time the Bankruptcy Court entered the January 23, 2020 Order, the judicial time and resources already expended by the Colorado courts on the State Law Claims, and the State Law Claims being based entirely on Colorado law, the Bankruptcy Court did not abuse its discretion in abstaining from determining the State Law Claims. Stated otherwise, there is simply no indication the Bankruptcy Court made "a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."[81]

### 2.      The Claim Objections

McIntyre asserts the Bankruptcy Court must exercise jurisdiction over the Claim Objections under § 1334(e)(1) because the Claim Objections are core proceedings. We, again, disagree. Although the Claim Objections are core proceedings, the Bankruptcy Court, focusing on substance rather than form, dismissed them because they were "simply a reassertion of the [State Law Claims] the Court [had] already abstained from hearing[.]"[82] As discussed above, the Bankruptcy Court may abstain from hearing not

---

[81] *In re Westby*, 486 B.R. 509, 515 (10th Cir. BAP 2013).

[82] Final Order at 2, *in* Appellant's App. at 1694.

only non-core matters, but also core proceedings, including claim objections, in the interest of state comity and respect for state law.[83] Given the state law issues underlying the Claim Objections as well as the time and resources expended by the Colorado courts on the State Law Claims, the dismissal of the Claim Objections without prejudice, and the discretion afforded the Bankruptcy Court to abstain, even in core matters, the Bankruptcy Court did not abuse its discretion in doing so.

> C. *The Bankruptcy Court did not err in denying McIntyre leave to amend the Complaint because such an amendment would be futile.*

Federal Rule of Civil Procedure 15, incorporated by Bankruptcy Rule 7015, provides courts should freely grant leave to amend a complaint "when justice so requires."[84] However, denying leave to amend is appropriate when such an amendment would be futile.[85] An amendment is futile when "the complaint, as amended, would be subject to dismissal."[86]

---

[83] 28 U.S.C. § 1334(c)(3). *See also United States v. Bagley (In re Murdock Mach. & Eng'g Co. of Utah)*, 990 F.2d 567, 572 (10th Cir. 1993) (in claim allowance process, where a specialized forum or administrative agency has been entrusted with authority to liquidate claims such as those before the bankruptcy court, the bankruptcy court usually should defer to that forum); *Hanson v. HSBC Bank, USA (In re Hanson)*, 525 B.R. 791, 796 (Bankr. M.D. Fla. 2015) (court abstained from hearing count in adversary proceeding that was an objection to a proof of claim as objection was based entirely on state law that could be resolved in foreclosure action pending when bankruptcy case was filed); *In re BFW Liquidation, LLC,* 459 B.R. 757, 779-779 (Bankr. N.D. Ala. 2011) (court abstained from hearing debtor's objection to proof of claim to allow the extent of withdrawal liability to be resolved through arbitration).

[84] Fed. R. Civ. P. 15(a)(2).

[85] *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1102–2 (10th Cir. 2019).

[86] *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Inv.'s Servs. Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

McIntyre contends the Bankruptcy Court erred in applying the *Rooker-Feldman* doctrine to his motion for leave to amend his Complaint to include a § 1983 claim.[87] In support, McIntyre asserts the State Court Judgment was not final because the highest state court had not yet affirmed it.[88] Additionally, McIntyre argues the amendment would not be futile because his § 1983 claim would not be subject to dismissal.[89]

Appellees argue that, even if McIntyre is correct and *Rooker-Feldman* does not apply, McIntyre's proposed amendment to the Complaint would still be futile as he cannot meet the elements of a § 1983 claim.

When the Bankruptcy Court entered the January 23, 2020 Order, the State Court Judgment was pending on appeal so applying the *Rooker-Feldman* doctrine would likely have been improper without the necessary final judgment.[90] But we need not decide that

---

[87] The *Rooker-Feldman* doctrine provides "federal courts lack subject matter jurisdiction to hear appeals from final judgments of state courts or to adjudicate claims inextricably intertwined with those judgments." *In re Ebel*, 139 F. App'x 26, 28 (10th Cir. 2005) (citing *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923)).

[88] *See Notice of Colorado Court of Appeals Ruling* (BAP ECF No. 46).

[89] McIntyre alleged the Appellees misused the state court interpleader cause of action as a de facto pre-judgment attachment, and the state court's failure to hold an evidentiary hearing to show the evidence thereof violated his due process rights.

[90] *See Guttman v. Khalsa*, 446 F.3d 1027, 1032 (10th Cir. 2006) (concluding *Rooker-Feldman* only applies to state court decisions from the highest court) (quoting *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 24 (1st Cir. 2005). Under Colorado law, a final judgment exists when "[a]n issue is "fully and finally litigated when the highest court of the state to which a defendant could appeal as of right has ruled on the merits of the question." *People v. Rodriguez*, 914 P.2d 230, 249 (Colo. 1996) (quoting ABA Standards § 22–6.1(a) at 22–62). Similarly, the Supreme Court of Colorado in *Rantz* clarified that "[f]or the purposes of issue preclusion, a judgment that is still pending on appeal is not final," and they

26

today because, in the April 16, 2020 Order, the Bankruptcy Court revisited its analysis and ruled, regardless of the application of *Rooker-Feldman*, McIntyre's proposed amendment to add a § 1983 claim to the Complaint would be subject to dismissal as a matter of law and was, therefore, futile.[91]

To state a claim for relief under § 1983, a party must (i) establish a deprivation of a constitutional right or law and (ii) that the deprivation was committed under color of state law.[92] For a private actor to act under color of state law, the private actor "must be jointly engaged with state officials in the conduct allegedly violating the federal right."[93] An "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action."[94] Moreover, use of the state court system does not transform a private party's conduct into state action as required by § 1983.[95]

---

"expressly [overruled] the line of court of appeals cases to the extent they [held] to the contrary." *Rantz v. Kaufman*, 109 P.3d 132, 141 (Colo. 2005).

[91] The Bankruptcy Court noted, even if *Rooker-Feldman* did not apply, the § 1983 claim would still be subject to dismissal under Federal Rule of Bankruptcy Procedure 7012 for failure to state a claim for which relief can be granted. *See* April 16, 2020 Order at 6, *in* Appellant's App. at 1708.

[92] *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).

[93] *Carey v. Cont'l Airlines, Inc.*, 823 F.2d 1402, 1404 (10th Cir. 1987). *See also Wittner v. Banner Health*, 720 F.3d 770, 775 (10th Cir. 2013) (The Tenth Circuit has "applied various analyses and referred to them as the 'nexus test,' the 'public function test,' the 'joint action test,' and the 'symbiotic relationship test.'").

[94] *Id.* (quoting *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 52).

[95] *Walton v. McBride*, No. CV-19-348-HE, 2019 WL 5255272, at *3 (W.D. Okla. Sept. 12, 2019) (unpublished), *report and recommendation adopted*, No. CIV-19-0348-HE, 2019 WL 5212899 (W.D. Okla. Oct. 16, 2019) (unpublished) (citing *Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000) ("A private individual does not engage in state action simply by availing herself of a state procedure.")).

In his proposed § 1983 claim,[96] McIntyre failed to allege any facts showing Appellees acted in concert or jointly with state officials to violate or deprive McIntyre of his constitutional rights. In fact, his proposed Amended Complaint contains no identification of any Colorado state official, either generically or specifically, who allegedly acted in concert with Appellees. Even if Appellees acted wrongfully in filing the State Court Action (as to which this Court makes no judgment), in the absence of any valid claim of a conspiracy between Appellees and Colorado state officials, there is no basis for a claim under § 1983.[97] Consequently, because McIntyre's § 1983 claim in his proposed Amended Complaint, "could not survive dismissal, amendment would have been futile and leave to amend was properly denied."[98] Accordingly, the Bankruptcy Court did not err in denying McIntyre's request for leave to amend the Complaint on the basis of futility.

## V.　Conclusion

The Bankruptcy Court did not err in concluding the Funds were not property of McIntyre's bankruptcy estate. However, the Bankruptcy Court did err in concluding there was no subject matter jurisdiction over the State Law Claims. Even so, we conclude such error was harmless, and the Bankruptcy Court did not abuse its discretion by permissively

---

[96] *First Amended Adversary Complaint and Objection to Claims of SoL Energy and Ken Olson* (the "Amended Complaint"), *in* Appellant's App. At 368–371.

[97] *Walton,* 2019 WL 5255272, at *3 (quoting *Green v. Seymour*, 59 F.3d 1073, 1078 (10th Cir. 1995)).

[98] *Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000) (citing *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983)).

abstaining from hearing both the State Law Claims and the Claim Objections, nor did it abuse its discretion in denying leave to amend the Complaint. Accordingly, the Bankruptcy Court is AFFIRMED.